[Decided at Pendleton July 31, 1897.]

## Re McCULLOUGH'S ESTATE.

### MULDRICK v. GALBRAITH.

(49 Pac. 886.)

Accounts of Executors—Expenses of Travel.—An administrator who, before decedent's death, visited him at his request, is not entitled to charge the estate for his expenses, when no promise of payment by decedent is shown, and the parties were relatives and on friendly terms; but the admistrator is entitled to payment for traveling expenses incurred on a visit to the executrix, at her request, to consult as to the proper management of the estate.

Idem.—A nephew who persuaded his uncle to accompany him on a dangerous trip, and paid his expenses, cannot recover from the uncle's estate the amount of the expenses, although the uncle had agreed to repay them, inasmuch as the uncle went merely to accommodate the nephew and for the latter's increased safety.

Attorney's Fees.—An item in an administrator's final account of money paid to his attorney for making an inventory may be rejected when such attorney is allowed a gross sum for his services in the management and settlement of the estate.

Expenses of Travel.—An administrator who makes a charge of $100 against an estate, for expenses incurred and time employed on a business journey connected therewith, and an additional charge of $30 for making a subsequent trip to the same place, will be allowed but $60 for both trips, when it appears that the expenses incident to the journey do not exceed $30.

Extra Compensation.—The allowance of extra compensation to an administrator for services rendered in the discharge of his duties is a matter largely within the discretion of the county court (section 1180 Hill's Ann. Laws), and the amount so awarded will not be disturbed on appeal, unless there has been a manifest abuse of discretion, or the amount so allowed is disproportionate or not equivalent to the services performed: Steel v. Holladay, 20 Or. 462, applied.

Power of Executor to Contract for Attorney's Fees.—One who is acting in a representative capacity cannot bind the estate over which he has control except for expenses of protecting it or by statutory authority. Within this rule an administrator may, under section 1178,

Hill's Ann. Laws, allowing reasonable attorney fees for necessary lit-
igation, contract with an attorney to undertake litigation for a liberal
fee contingent on success.

Attorney's Fees Against Estates.—An attorney may be allowed his ex-
penses necessarily incurred in travel for the estate which he represents,
and a gross sum for all his services.   This method of fixing compensa-
tion is preferable to allowing claims for different services as they are
performed.   It is desirable, too, that as few attorneys should be em-
ployed as is consistent with the amount and condition of the estate—
ordinarily one is sufficient.

From Grant; Morton D. Clifford, Judge.

This is a dispute over the final report of W. J. Gal-
braith as administrator in Oregon of the estate of his
uncle, John McCullough.

The facts are that on June 11, 1894, John McCul-
lough died testate, leaving an estate in Washington
County, Idaho, of the probable value of $100,000; and,
his last will and testament being admitted to probate
in that county, Rebecca J. McCulloch, his widow, was
appointed, and thereupon duly qualified, as executrix
thereof.   The deceased also left an estate in Grant
County, Oregon, and on October 14, 1894, the county
court thereof appointed W. J. Galbraith administrator,
with the will annexed, and he thereafter duly qualified
as such.   The assets of the estate in the latter county
consisted principally of a debt due from one John
Muldrick, who, as the financial agent of the deceased
in his lifetime, had received large sums of money to
the use of his principal, but upon Galbraith's appoint-
ment Muldrick informed him and the persons who
were appointed appraisers that he was not indebted
to the estate, but that it owed him about $3,000.   Gal-
braith thereupon employed Thornton Williams as his
attorney, and together they went to Weiser, Idaho, to

consult with the executrix in relation to the matter, and, after examining the books of account kept and other memoranda left by the deceased, as well as letters written to him by Muldrick, acknowledging the receipt and collection of certain sums of money to the use of the deceased, an action was commenced against Muldrick by Galbraith in his representative capacity to recover the sum of $31,450.92, the amount claimed to be due from Muldrick to the deceased, as ascertained from an inspection of the books, letters, etc. Muldrick, after denying the material allegations of the complaint, averred in his answer that he had an accounting and settlement with the deceased, upon effecting which there was found to be due to the latter the sum of twenty-five cents, which he then paid, and thereafter the deceased became indebted to him in the sum of $2,989.64, for which he prayed judgment against the estate. The reply having put in issue the allegations of new matter contained in the answer, a trial was commenced, and, after Galbraith had introduced his evidence, and rested, a stipulation was entered into under the terms of which a judgment for the sum of $10,000 was rendered against Muldrick. Galbraith, having fully administered the estate under his charge, filed his final account, showing that he had collected the sum of $10,373.99; that he had paid out a portion of this amount in the discharge of his duties, and, having a certain sum on hand, prayed that it might be applied to the payment of his charges and expenses as administrator, including the claims of Thornton Williams as his attorney, and that the remainder might be paid to the executrix.

Margaret Wood and Jennie Muldrick, heirs of the deceased, filed objections to certain items contained in this final account, to which Galbraith answered, showing the reasonableness of said charges, and, a reply to the answer having been filed, the cause was referred to W. J. Coleman, who took and reported the evidence, from which the county court made its findings upon the matters in issue, and rejected the following items of the account: (1) To expenses incurred by Galbraith on a journey from Canyon City, Oregon, to Weiser, Idaho, and return (several items), $24.05. (2) To amount paid by Galbraith for lumber at the request of the deceased, $265. (3) To two trips to Weiser prior to his appointment as administrator, $120. (4) To expenses of McCullough on a journey to Cœur d'Alene, paid by Galbraith, $100. (5) To advice from and service by Thornton Williams in making the inventory, $25. Upon the remaining items to which objections were made the court allowed them in part only as follows: (6) To expenses and time of Galbraith on a trip to Weiser with Williams, $100, and another trip there after witnesses, $30, total for the two trips, $130; amount allowed, $60. (7) To additional compensation for extra services as administrator, $500; allowed, $50. (8) To trip to Weiser by Williams, advice and service in preparing statement of claim against Muldrick, filed with inventory, $250; $60 allowed. (9) To services rendered in procuring evidence and conducting the trial in the action of Galbraith against Muldrick, $2,500; $1,000 allowed. (10) To services in settling up the estate, $400; amount allowed, $100. The final account was there-

upon approved with these exceptions, and it was decreed that the administrator should be discharged upon his payment to the executrix of the sum of $8,303.38, which he then had on hand. From this decree the administrator and said heirs appealed to the circuit court, which found, as to the ninth item, that the sum of $150 had been paid by the administrator to local attorneys as their fees in the trial of the case of Galbraith against Muldrick, and thereupon reduced the amount so awarded to Williams to $850, thereby increasing the amount to be paid to the exeecutrix, but otherwise affirmed the decree of the county court, and from this latter decree the administrator appeals to this court.

MODIFIED.

For appellant there was a brief and an oral argument by *Mr. James A. Fee.*

For respondent there was a brief and an oral argument by *Messrs. Chas. A. Sweek* and *Milton W. Smith.*

MR. CHIEF JUSTICE MOORE, after making the foregoing statement, delivered the opinion of the court.

The only questions presented for consideration by this appeal are whether the items contained in the final account of the administrator to which objections have been made are proper charges against the decedent's estate in Grant County, and, if so, are they reasonable in amount? Considering the items objected to in their order as numbered, it appears that the county court allowed on account of the sixth item the sum of $30 per trip as expenses by Galbraith in mak-

ing the journey from Canyon City, to Weiser, Idaho, and return, and, as the first item of $24.05 is apparently embraced in that allowance, we think said first item was properly rejected.

The deceased being the owner of a tract of land in Grant County, Galbraith, at his request, purchased for him a quantity of lumber to build a house thereon, paying therefor the sum of $265; but, the deceased having given this land to Galbraith, who was his nephew, and executed a deed to him therefor, the house was not erected, and, the lumber having been considerably damaged, Galbraith, after his appointment as administrator, sold it for the sum of $80. Jennie Wood, a niece of the deceased, having been called as a witness on behalf of the objectors, in answer to a question as to what statements she had heard John McCullough make in regard to the lumber in question, said: "I have heard my uncle say a number of times that he never ordered any such bill of lumber." Galbraith, however, testified that after he had ordered the lumber, in pursuance of McCullough's request, the latter, thinking the house would be too large, and cost more than he desired to expend in its construction, objected to the size of the material, but, after inquiring as to the size and probable cost of a house in the vicinity, he concluded to accept the lumber, and it was thereupon hauled to and stacked in a shed on the premises. Comparing the testimony of Jennie Wood with that of Galbraith, the reason for McCullough's statement, as testified to by her, is apparent, and, while the deceased may never have ordered such a bill of lumber, he did ultimately ratify the order as given by Galbraith, and,

such being the case, we think it conclusively appears that the estate is liable for the cost of the material, and should be credited with the amount received on account of the sale thereof.

Galbraith made two trips to Weiser prior to his appointment as administrator, the first at the request of the deceased, and the second at the suggestion of the executrix, for which he charges the estate $120. It does not conclusively appear that McCullough promised to pay his nephew anything for making the first journey, and, in view of the relation existing between them, we think the county court properly rejected that part of the third item; but we believe Galbraith is entitled to the sum of $30 on account of the trip he made at the suggestion of and to consult with the executrix as to the proper management of the estate.

It appears that Galbraith's brother was murdered at Cœur D'Alene, and, desiring to visit that place to look after his brother's estate, he persuaded McCullough to accompany him, paying the latter's expenses, amounting to the sum of $100, which McCullough agreed to repay. This journey, in our judgment, was made by McCullough for the accommodation of Galbraith, whose wife objected to his visiting the scene of the killing of his brother unless his uncle accompanied him; and, notwithstanding McCullough agreed to pay his own expenses incurred on the trip, we think they do not constitute a legal charge against his estate, and hence the county court properly rejected the fourth item.

It also appears that the fifth item of $25, for the services of an attorney in making an inventory, was

disallowed; but, when it is remembered that this charge is made for the attorney employed in the settlement of the estate, we cannot see that any grave error was committed in rejecting it. While it might aid a county court in reaching a proper conclusion as to what would be reasonable compensation for an attorney in the settlement of an estate, and particularly so when the services performed have been rendered by different attorneys, to have each present an itemized account of his part of the work, when it appears that one attorney performed all the services, or was the senior counsel in the management and settlement of an estate, the reason for the course suggested must necessarily cease, and the attorney fee allowed in such case may be a gross sum, measured by the services performed, while taking into consideration the value of the estate involved, as well as the ability of the person by whose counsel and labors the same has been brought to a successful and final settlement.

Examining those items of the final account which were allowed in part only, it appears that Galbraith charges the sum of $100 for expenses incurred and time employed in making a journey to Weiser, Idaho, while as a part of the same item he charges only $30 for the time employed in making another trip to that place. The evidence tends to show that the expenses incident to the journey do not necessarily exceed the sum of $30; and, the county court having allowed $60 as a reasonable charge for making the two trips, we think no error was committed in modifying the sixth item.

It also appears that Galbraith, having received the

sum of $352.19 as the commission prescribed by law, demanded the further sum of $500 as extra compensation for his services as administrator, but the county court allowed on account thereof the sum of $50 only. The statute, after prescribing the commission which an administrator or executor is entitled to receive, also provides that: "In all cases, such further compensation as is just and reasonable may be allowed by the court or judge thereof, for any extraordinary and unusual services, not ordinarily required of an executor or administrator in the discharge of his trust:" Hill's Ann. Laws, § 1180. The county court, under this provision, after awarding Galbraith the sum of $60 on account of expenses incurred in making two trips to Weiser, Idaho, also allowed him the sum of $50 as extra compensation, so that the total so received by the administrator amounted to the sum of $462.19. The allowance to an administrator of extra compensation for services rendered in the discharge of his duties must necessarily be a matter largely within the discretion of the county court, which, being conversant with the services required, as well as those performed by its appointee, can ordinarily be relied upon to make a fair allowance for unusual services; and, such being the case, the amount so awarded ought not to be disturbed on a review of its acts on appeal, unless it clearly appears that there has been a manifest abuse of discretion, or that the amount allowed was disproportionate, or not equivalent, to the services performed. "The fees provided by statute," says Bean, J., in *Steel* v. *Holladay*, 20 Or. 462, (26 Pac. 562,) "are to be deemed ample compensation for an executor, ex-

cept in unusual cases, and when he is required to render extraordinary services not ordinarily required of an executor. His additional compensation, if any, is within the discretionary power of the court to allow; and when a claim is made therefor it should be scrutinized with care, and never allowed unless the court is satisfied that it is just and reasonable." It is true, the administrator instituted an action, and thereby recovered the amount so obtained by him, which furnished the greater portion of the assets of the estate upon which his commission was predicated, and without it his compensation would have been nominal; so that, while he may have been compelled to perform extra duty, we think the county court allowed him a reasonable compensation therefor.

The claim of the administrator on account of the charge of Thornton Williams for $250, under the eighth item, was reduced by the county court to $60, no doubt intending thereby to reimburse the attorney for the expenses incurred, and to adjust his compensation under the general claim therefor. This being so, what has hereinbefore been said in discussing the fifth item may apply with equal force to this, and, adopting the rule there announced, we think no error was committed in not allowing a greater sum.

The charge, under the ninth item, for an attorney fee for prosecuting the action of Galbraith against Muldrick, furnishes the principal issue in the case before us. The evidence tends to show that it was quite doubtful, when the action was commenced, whether any sum whatever could be recovered from Muldrick, because it was difficult to say with any degree of cer-

tainty what amounts, if any, he had paid on account
of the money received by him to the use of the de-
ceased.    In this uncertain condition of affairs, Gal-
braith entered into a contract with Williams, by which
it was agreed that, if the result proved unsatisfactory,
he should receive his actual expenses only, but, if he
should be successful in the action, and thereby obtain
a considerable amount, he was to receive a liberal fee.
This agreement presents the question whether its
terms can be enforced, and, if so, what is a reasonable
attorney fee under the circumstances.    The statute
provides that "An executor or administrator shall be
allowed, in the settlement of his account, all necessary
expenses incurred in the care, management, and set-
tlement of the estate, including reasonable attorney
fees in any necessary litigation or matter requiring
legal advice or counsel." Hill's Ann. Laws, § 1178.
That the action against Muldrick was necessary is evi-
dent from his declaration that he was not indebted to
the estate, and this statement is made more emphatic
by his verified answer to the effect that the estate was
indebted to him in the sum of $2,989.64.    The admin-
istrator, however, could not, under this statute, bind
the estate to pay for the services of an attorney any
more than they were reasonably worth, for the rule
appears to be pretty well settled that a person acting
in a representative capacity cannot create a charge
against the estate over which he has control, except
as specially authorized by statute, or to reimburse
himself for moneys necessarily expended in protecting
the propeity intrusted to him: *Weaver* v. *Van Akin*,
71 Mich. 69 (38 N. W. 677); *Noyes* v. *Blakeman*, 6 N.

Y. 567. The contract entered into with Williams is, in effect, to pay him what his services were reasonably worth, and, being contingent upon a recovery, the question to be considered is whether the allowance by the circuit court fills the measure of the contract.

In taking the deposition of Hon. H. H. Northup, county judge of Multnomah County, upon that subject, the following question was propounded: "In case the fee was contingent, what, in your judgment, would be a reasonable charge?" To which he answered: "It is usual, where the fee is contingent, for the parties to agree upon the amount to be paid. If, however, it was the understanding that no fee was to be paid unless the plaintiff in the suit was successful, and no price was stipulated to be paid, I would say that $1,500 or $2,000 would be reasonable." Further testifying, this witness says: "Of course, it is not possible for me to answer as definitely as I would like to. If the attorney was required to visit different localities, remote from his residence and place of business, and was required to pay his own expenses, of course that would add to the charge that he should make, and the amount he was to be paid. If the understanding was that he was to receive no compensation unless recovery was had, and he was to be well paid in case of recovery, and a recovery of $10,000 was had, I don't know that $2,500 would be an excessive fee; but I think that $2,000 would be a fair compensation. If the estate was before me, I would settle the claim at $2,000 rather than $2,500." This witness is corroborated by the testimony of John F. Caples, W. W.

Thayer, ex chief justice of this court, attorneys of the City of Portland, and also by J. C. Moreland, ex county judge of Multnomah County; John J. Balleray and James A. Fee, ex-circuit judges, and by M. Dustin and T. J. Hailey, the latter of whom say that the fees of an attorney in the eastern part of this state are greater than in the City of Portland, and that $2,500 is not an unreasonable sum to be paid for the services rendered. In view of this evidence, we think the circuit and county courts are in error in fixing the compensation for the services performed in the trial of said action. It is true, the action was not brought to recover unliquidated damages, in which case a large percentage of the amount recovered is usually demanded as attorney's fees; but, while the action involved the recovery of a sum that could be reduced to a mathematical certainty, this amount was uncertain, and must necessarily remain so until Muldrick submitted in evidence the payment he had made on account of the money received by him.

The evidence of the attorneys called as experts tends to show that an attorney employed to settle an estate would probably become more conversant with the facts, and could try an action in which the administrator was a party, cheaper than a stranger to the proceedings; and, this being so, we believe that the sum of $2,000 affords a reasonable compensation as attorney's fees for the trial of the action and the settlement of the estate. "Where several counsel," says Mr. Woerner in his work on the American Law of Administration (section 515), "are employed, credit should not be allowed for the fees of more than one;" citing

in support thereof the case of *Crowder* v. *Shakelford*, 35 Miss. 321, in which it appears that, competent counsel having been retained to try a suit, others were thereupon engaged to assist. HANDY, J., rendering the opinion of the court, says: "As to the disallowance of the fees paid in the suits against Mrs. Stokes, it appears that the fee paid one counsel was allowed; and there appears to have been no necessity for the employment of additional counsel, as the cases were not litigated. The claim on this account was, therefore, properly rejected." The rule thus laid down cannot well apply where different attorneys have necessarily been employed to perform separate parts of the service demanded, in which case the fees would be proportionally greater than if the entire service was rendered by the same attorney. In view of this rule, we have considered the sum of $2,000 as a reasonable compensation for the whole service, and, as there has been paid by the administrator to Parish & Cozad $25, and to M. Dustin $150, as attorney's fees, the remainder, or $1,825, is deemed a reasonable fee for the service performed by Williams; but, having received from the administrator the sum of $520 on account thereof, there is yet due him the further sum of $1,305. This is in addition to the payments of $13 and $25, respectively, made to him on account of collections of money due the estate, and the sum of $60 on account of his expenses. The conclusion we have reached renders it unnecessary to pass upon the sum awarded under the tenth item, which is embraced in the amount herein awarded. The decree, in so far as it relates to the attorney fee due Thornton Williams

and the amount to be paid to executrix, will therefore be modified in accordance with this opinion, but in all other respects affirmed.

Modified.