Decided December 7, 1897.

RE ASSIGNMENT OF BANK OF OREGON.

[51 Pac. 81.]

1. ASSIGNMENT OF ERRORS.—An assignment of error must be contained in the printed abstract of the record, as required by rule ten of the rules of the supreme court 24 Or. 600 (37 Pac. 8), or it will not be considered.

2. INSOLVENCY—FOLLOWING TRUST FUNDS.—Where an assignee or receiver, upon taking charge of an insolvent estate, does not find on hand the proceeds of a certain collection, or assets bought with such proceeds, he has no authority to use other assets to pay as a preferred claim the amount collected: *Ferchern* v. *Arndt*, 26 Or. 121, and *Muhlenberg* v. *Northwest Loan Company*, 26 Or. 132, applied.

3. COMPENSATION OF ASSIGNEE.—Under section 3180, Hill's Annotated Laws, an assignee is entitled to a reasonable compensation, considering his responsibility, his capacity, the amounts of property and labor involved, and the results achieved, and ordinarily the decision of the trial court on that subject will not be disturbed.

4. AUTHORITY OF BANK CASHIER.—Generally a bank cashier has authority to transfer and indorse negotiable paper held by the bank, but

in this case both the cashier and the transferee knew of a bylaw limiting this power, and hence the transfers were void.

From Linn:   George H. Burnett, Judge.

This is an appeal from a decree disallowing certain items of credit claimed by the assignee of an insolvent debtor, and charging him with the value of certain property which the court finds came into his possession as assets of the estate. The record shows that on June 19, 1893, the Bank of Oregon, a corporation engaged in the business of banking at Albany, Oregon, being no longer able to meet the payment of its obligations, closed the doors of its bank, and on the next day executed an assignment of all its property, for the benefit of its creditors, to one W. S. Thompson, who immediately qualified and entered upon the performance of his trust, the duties of which he continued to discharge until May 7, 1894, when, by order of the court, he was removed, and one D. H. James appointed in his stead, who thereupon duly qualified and entered upon the discharge of his duties. On June 25, 1894, Thompson, in obedience to the order of the court, filed his final account, whereupon James filed exceptions to certain items of credit claimed therein as follows:   July 14, 1893, by road tax paid to S. W. Ross, $24; July 25 and September 13, 1893, by cash paid to the First National Bank of Portland, Oregon, $173 and $259.94 respectively; and by services as assignee, $600. It is also alleged by James, in his objections to such report, that Thompson received, as part of the assets of said estate, but neg-

ɾected to charge himself therewith, certain promissory notes executed to it as follows: May 8, 1893, Blain & Merrill, for $1,551.21; November 18, 1892, W. E. Kelly, $11; September 27, 1892, Geo. W. Hill, $37, each payable on demand; December 10, 1892, H. Hurlburt, $30, payable March 10, 1893; August 31, 1892, P. J. Smiley, $32.17, payable December 1, 1892, and all bearing 10 per cent. interest, which notes Thompson had collected but neglected to account with the estate for the proceeds thereof. Upon the issues thus joined a trial was had, and the court found from the evidence that $300 was a reasonable compensation for the services performed by the assignee; that the several items of credit claimed by him in his final account, to which objections were made, were not proper charges against the estate; and that Thompson should be charged with the proceeds of said promissory notes. Thereupon the court rendered a decree against him for the same, and interest thereon, amounting to the sum of $2,717.57, from which decree Thompson prosecutes this appeal.

AFFIRMED.

For appellant there was a brief over the name of *Weatherford & Wyatt*, with an oral argument by *Mr. James K. Weatherford*.

For respondent there was a brief and an oral argument by *Mr. H. C. Watson*.

MR. CHIEF JUSTICE MOORE delivered the opinion.

1.   In the assignment of errors contained in the printed abstract of the record no exception to that part of the decree in relation to the amount claimed to have been paid by the assignee on account of road tax is noted, and, such being the case, that item will not be considered:   Rule 10, 24 Or. 600 (37 Pac. 8).

2.   Considering the other items of the final account to which objections are made, it appears that on July 23, 1893, one E. L. Thompson executed his promissory note to the Bank of Oregon, which it transferred by endorsement to its correspondent, the First National Bank of Portland, as collateral security, and that Thompson paid to the former bank the balance due on his note, as follows:   April 8, 1893, $50; May 1, $101; June 15, $23.   On September 9, 1892, E. E. Davis, W. A. Kimsey, and Z. H. Rudd executed their note for the sum of $250 to the Bank of Oregon, which it transferred by endorsement to the said Portland bank as collateral security.   On February 2, 1893, the makers of this note paid $259.94, the amount due thereon, to the Bank of Oregon, but it intermingled with its own funds and neglected to transmit to the holder of these notes the sums of money so paid by the respective makers, and when the deed of assignment was executed by said bank it had but $17.22 in money in its possession.   Thompson, considering the money so paid by the makers of these notes a trust fund, paid to the First National Bank of Portland, July 25, 1893, $173 on account of Thompson's note, and on September 13, 1893, $259.94, on

account of the note of Davis, Kimsey, and Rudd.
The evidence on this branch of the subject tends
to show that for some time prior to the assign-
ment an agreement existed between the Bank of
Oregon and the First National Bank of Portland,
whereby the latter bank honored drafts drawn
upon it by the former, to secure the payment of
which the Bank of Oregon transmitted, from time
to time, to the Portland bank, as collateral, promis-
sory notes executed to it, upon the maturity of
which these notes, upon request of the Bank of
Oregon, were returned and collected by it, but, in-
stead of remitting the money so collected, it trans-
mitted to the First National Bank such Portland
and eastern exchange as it might receive in the
ordinary course of its business.

It is contended by counsel for appellant that
this agreement authorized the Bank of Oregon to
collect these notes, and hold the proceeds thereof
as trustee of the First National Bank of Portland,
to which it was to remit the same from time to
time, but that, in violation of this agreement, the
money so collected was intermingled by the Bank of
Oregon with its own funds, in consequence of which
the lien of its *cestui que trust* attached to the combined
fund as a security for the amount due it; while
counsel for the objector insists that the Bank of
Oregon had authority from the Portland bank to
collect the amount due on these notes which it
held as collateral security, when returned for that
purpose, agreeing to remit in payment thereof such
Portland and eastern exchange as it might receive

in the ordinary course of business, and, this agreement having been fully performed by the Bank of Oregon, there was no breach of confidence, and hence no trust ever attached to the fund; and that, if it be admitted that a trust ever existed, there was no fund in existence at the time the assignment was made upon which it could operate, or to which it could attach. The money upon which the alleged lien is sought to be enforced was received by the Bank of Oregon from the makers of said notes prior to the assignment, and was intermingled with and became a part of its general funds, and as such were paid out in the ordinary course of its business prior to the assignment. There is no evidence to show that any part of the money so received was in the possession of the bank at the time it closed its doors, unless this can be inferred from the fact that the sum of $17.22 was found in its vaults; nor does it appear that any part of the same can be traced into the hands of the receiver since his appointment, or that the money so collected helped to swell the assets of the bank; so that, if it be admitted that a trust existed, there was no fund in existence at the time of the assignment upon which it could operate, and for that reason the objection to the credit so claimed must be sustained: *Ferchen* v. *Arndt*, 26 Or. 121 (46 Am. St. Rep. 603, 29 L. R. A. 664, 37 Pac. 161); *Muhlenberg* v. *Northwest Loan Company*, 26 Or. 132 (38 Pac. 932, 29 L. R. A. 667).

3.   Thompson claims the sum of $600 as a reasonable compensation for the services performed by

him as assignee from June 20, 1893, to May 7, 1894, at which time he was removed from his trust by order of the court, which finds that he is entitled to but $300 for such services. The statute, in prescribing the compensation to be paid to an assignee for his services, provides, in effect, that the court may allow him such commissions in the final settlement of his account as may be considered just, and reasonable: Section 3180, Hill's Annotated Laws. The compensation prescribed must be largely a matter within the discretion of the trial court, and the amount awarded should be predicated upon the time employed, the nature and quality of the services rendered, and the liability and responsibility of the assignee. Inasmuch as Thompson had collected from the debtors of the insolvent estate only about $3,000, and in view of the fact that he was removed from office by the court, we are not prepared to say that the allowance was not a reasonable compensation.

4. It also appears that one J. W. Blain was secretary and said W. S. Thompson treasurer of the Albany Building & Loan Association, a corporation, and that immediately prior to said assignment Blain and Thompson, as such officers of said corporation, deposited in the Bank of Oregon the sums of $292 and $819.82, respectively, and said corporation at the same time also had on deposit therein the further sum of $580, which had been ordered paid to one F. S. Crosby on his withdrawal from the association, making a total of $1,695.82 which the association had to its credit in the bank

at the time of its assignment, at and prior to which time Blain was the cashier and Thompson the bookkeeper and assistant cashier of the said bank. The by-laws of the Bank of Oregon, in prescribing the duties of its cashier, contained the following provision: "The cashier of this bank shall be responsible for all moneys, funds and valuables of this bank, and shall faithfully apply and account for all said moneys, funds and valuables, and deliver the same to the order of the board of directors of this bank, or to the person or persons authorized to receive the same." All the moneys of said bank having been paid out in the regular course of its business, except the sum of $17.22, Blain, as its cashier, immediately before the assignment, without any positive authority from its board of directors, transferred to Thompson, as treasurer of said building and loan association, for the purpose of reimbursing it on account of its deposits, the promissory notes, a detailed statement of which is hereinbefore given. It is contended by counsel for appellant that the Bank of Oregon, although in failing circumstances, and so known to be by the officers of the building and loan association, could prefer this creditor; that the transfer of the notes by Blain to Thompson for it, prior to the assignment of the bank, was a lawful exercise of power, and within the authority of the cashier as the general manager of the bank; and that, if it be conceded, for the sake of argument only, that these notes were wrongfully assigned, Thompson could not challenge any previous disposition of the

insolvent debtor, and that James takes such rights only as his assignor had, and cannot controvert the *bona fides* of the transfer; while counsel for the objector maintain that a cashier of a bank has no power, unless specially conferred, to transfer the negotiable notes of a bank to its creditors in payment of an antecedent debt, or to assign the same as security for a past consideration, and that, not only was such authority not conferred, but it was expressly withheld by the board of directors, of which fact Blain and Thompson, as cashier and assistant cashier of the Bank of Oregon, had due notice.

In *Wild* v. *Passamaquoddy Bank*, 3 Mason 505, (Fed. Cases No. 17,646), Mr. Justice STORY says: "The cashier of a bank is, *virtute officii*, generally intrusted with the notes, securities and other funds of the bank, and is held out to the world by the bank as its general agent in the negotiation, management and disposal of them. *Prima facie*, therefore, he must be deemed to have authority to transfer and indorse negotiable securities held by the bank for its use and in its behalf. No special authority for this purpose is necessary to be proved. If any bank chooses to depart from this general course of business, it is certainly at liberty so to do; but in such case it is incumbent on the bank to show that it has interposed a restriction, and that such restriction is known to those with whom it is in the habit of doing business." In *Robb* v. *Ross County Bank*, 41 Barb. 586, SUTHERLAND, J., in commenting upon the authority of a bank to in-

dorse a bill of exchange, says: "There is no evidence or finding tending to show that the charter of the bank contained any restrictive limitation on its power of negotiating or indorsing notes or bills of exchange, or on the authority of its cashier to indorse such negotiable paper for the bank. The presumption is, then, that the bank had power, and its cashier authority, to negotiate or indorse the bill." In the case at bar no such presumption can be indulged in support of the action of the cashier of the bank, nor can it be invoked to protect the person to whom these notes were assigned, for the evidence tends to show and the court finds that the board of directors of the Bank of Oregon, being the general agent of the corporation, chose to depart from the usual course of business ordinarily pursued by a bank, and by their bylaws interposed a restriction upon the cashier, who was the special agent of the bank, thereby prohibiting him from transferring the negotiable securities, or delivering them to any person except to the order of the board of directors, or to the person or persons authorized to receive the same. The board of directors never ordered these promissory notes to be delivered to Thompson, nor was he entitled to or authorized to receive the same, and, having been the assistant cashier of the bank, he is chargeable with notice of this restriction imposed. Such being the case, he is not an innocent purchaser of these securities for a valuable consideration without notice.

In *Everett* v. *United States*, 30 Am. Dec. 584, it was held that when the presumption of authority arising from the mere indorsement of negotiable paper by the cashier of a bank had been overcome by proof that such transfer of the bank's securities was not made in the regular course of business, but in prejudice of its rights, no title to the chose in action so indorsed passes to the assignee, and hence no action can be maintained by him thereon. It has been held in this state that the assignee of an insolvent debtor, not being an innocent purchaser for value, takes no better title to his grantor's property by the deed of assignment than that possessed by the assignor at the date of the execution of the conveyance, and for this reason the assignee could not question the *bona fides* of a prior transfer by the debtor of the legal title to any portion of his estate, even when made to defraud creditors; but that, when the legal title to the property passes to the assignee by the transfer, subject to any lien thereon, the assignee, having the legal title, is in a position to and may convert the legality of such lien: *Jacobs* v. *Ervin*, 9 Or. 52; *Gammons* v. *Holman*, 11 Or. 284 (3 Pac. 676); *Helm* v. *Gilroy*, 20 Or. 517 (26 Pac. 851). Applying these rules to the case at bar, the cashier of the bank having no authority to assign the promissory notes in question for the purpose intended, no title thereto passed to the Albany Building & Loan Association; and, such being the case, James, as the present assignee, is in a condition and may controvert the act of the agent

of the insolvent debtor relating to this transfer, and hence it follows that the decree must be affirmed.

AFFIRMED.

Mr. Justice WOLVERTON, having been of counsel in the court below, took no part in the consideration of this cause on appeal.