The services for which General Idleman is asking and has been allowed compensation were rendered to Dr. Ong as executor. For the services Dr. Ong is personally liable to General Idleman. The services are not a direct charge against the estate but constitute a claim against Dr. Ong personally. The executor is allowed to retain from the money of the estate the expenses incurred by him in the administration of the estate, including reasonable attorney fees. The language of the statutes is as follows:
"An executor or administrator shall be allowed, in the settlement of his account, all necessary expenses incurred in the care, management, and settlement of the estate, including reasonable attorney fees in any necessary litigation or matter requiring legal advice or counsel." Or. L., § 1290; Waite v.Willis, 42 Or. 288, 290 (70 P. 1034).
What is a reasonable attorney fees depends upon the amount and nature of the services rendered, the amount of the estate and length of time occupied in rendering such services, the ability and skill required, and the experience and training of the attorney rendering this service. The same standard for determining the value of an attorney's service when rendered to an executor should be employed as is used in fixing his compensation when retained by a person in his individual capacity. There is this difference, however, that an executor will not be allowed an amount for attorney fees in excess of the reasonable value of those fees, while one acting for himself alone is at liberty to make any contract with the attorney that he deems advisable. General Idleman and Dr. Ong could have agreed between themselves *Page 222 
as to the amount the former should receive for his services, and assuming that agreement to have been fairly made, both would be bound thereby. But Dr. Ong could not have bound the estate to pay more than a reasonable fee for the services rendered, and if that fee should be less than the agreed amount, Dr. Ong would have been personally liable for the excess. No agreement was made between them, and the executor was not willing to assume the responsibility of entering into an agreement to pay the amount charged by General Idleman in this litigation.
It was the duty of the executor to account for that part of the estate of his testate situated in Massachusetts and New York so far as it was possible for him to do so. It was his duty to make proper returns to the United States for the purpose of computing the estate tax and to the State of Oregon for the purpose of computing the inheritance tax. This could not be done without a knowledge of the parts of the estate situated in Massachusetts and New York. In fact, Dr. Ong upon the advice of General Idleman was appointed executor of the will in the State of Massachusetts, and he actually administered that part of the estate situated in Massachusetts.
General Idleman served as attorney for the executor for about fifteen months. During that time, in addition to the ordinary work imposed upon an attorney for an executor in the progress of executing the will, he investigated the transactions of one Hammond, who had served as guardian of the decedent for two or three years immediately prior to his death. During the guardianship, the guardian had handled a large amount of property and had not stated any account. The work required the examination *Page 223 
of the books of the guardian as well as securing a report of his transactions. When the guardian finally reported, he claimed as compensation for his services the sum of $100,000. That sum seemed exorbitant to the executor and objections were filed and a contest conducted, resulting in an order of the court fixing the guardian compensation at $25,000. An appeal was taken to this court where the judgment of the Circuit Court was affirmed: Inre Guardianship of Thomas Prince, 104 Or. 670 (209 P. 90). An idea of the work involved in the trial of that case in the Circuit Court may be gained by an examination of the opinion of this court. General Idleman did not appear in this court.
Another additional service rendered by General Idleman was the preparation of a statement of facts in the form of a complaint in a suit instituted in Massachusetts against a trustee of the decedent. A Mr. Ames had served as trustee for a number of years for the decedent and refused to account or make a statement of his transactions, or of the property in his possession or under his control belonging to the estate. General Idleman prepared the necessary statement of facts and forwarded them to attorneys in Massachusetts for the purpose of instituting a suit there. As a result of this suit, the trustee, who was a nephew of the decedent and one of the residuary legatees, and the other residuary legatees effected an agreement and settlement whereby that suit was dismissed. In this same agreement arrangements were made for the final distribution of the estate and the closing of the administration. This agreement and settlement also resulted in the *Page 224 
discharge of General Idleman as attorney for Dr. Ong, executor.
Harold T. Prince, son and only legal heir of the deceased, commenced a contest of the will. Before this contest was brought to a hearing the agreement referred to above between the other legatees and devisees was entered into resulting in the contest being dismissed.
The principal contention on the part of appellants is that General Idleman, the claimant and respondent, is not entitled to compensation from the estate administered in Oregon for his services to Dr. Ong, the executor and administrator in Massachusetts. We believe that the appellants are precluded from making this contention for the reason that Dr. Ong in his final account submits to the court this identical question which is recited in his final account as follows:
"* * In performing the duties of your executor in the State of Oregon, and as ancillary executor of said estate in the State of Massachusetts, it was necessary that your executor employ attorneys to represent him and to do the legal work necessary in the premises, and to advise your executor as to his duties and procedure in the matter of probating said estate; that your executor employed Mr. C.M. Idleman, attorney in the city of Portland, Oregon, to represent him in that capacity."
It thus clearly appears that Mr. Idleman was retained not only to assist Dr. Ong in his duties as executor in Oregon but in the same capacity also in Massachusetts. Mr. Price, who represents Dr. Ong, as well as the other appellants in this court, received his allowance for similar services from the Circuit Court from which this appeal is taken. We *Page 225 
have discovered nothing in the record justifying us in making any different basis for allowing to Dr. Ong, executor, and to Mr. Price, his attorney, pay for their services to both estates than from that to be used in fixing the fee due Mr. Idleman for similar services. All of the beneficiaries of the estate agreed to the compensation allowed the executor and Mr. Price, and the learned circuit judge in this state confirmed that agreement and allowed Dr. Ong, the executor, his claims therefor. The Circuit Court recited in its judgment as follows:
"And it further appearing to the Court that Mr. C.M. Idleman has submitted a bill to said executor in the sum of $50,000 for services rendered by him as attorney for said executor, and said estate, * *, and that the Trustees under the last will and testament, and the other residuary legatees thereunder have appeared and filed objections to the allowance of the claim of Mr. C.M. Idleman, and the Court having theretofore heard the testimony in support of and against said claim, and now being fully advised in the premises, finds that the sum of $40,000 is a reasonable sum to be allowed Mr. C.M. Idleman as attorney fees for legal services rendered by him as attorney for said executor in said estate * *."
The judgment further recites:
"That the gross estate administered upon by said executor, including the assets in the State of Oregon and in the State of Massachusetts, and including the income therefrom since the appointment of said executor, is in excess of $1,200,000."
It thus appears that the value of the estate for which the executor was responsible was in excess of $1,200,000. It would not be fair or just to limit the compensation of his attorney to compensation based upon the part of the estate limited to Oregon, in *Page 226 
view of the fact that General Idleman's services were required by the executor as well for that part of the estate administered in Massachusetts as in the State of Oregon. Mr. Price testified on the stand that after he became attorney for Dr. Ong, the executor, he had done all the work of the attorneys and that he kept pretty close touch on everything that was done in the estate. "I don't believe there has been an order taken in the eastern jurisdiction without I have first been consulted, and I believe that I have copies of all of those orders."
The attorneys for appellants rely on Or. L., Section 761, reading as follows:
"The authority * * of an executor or administrator does not extend beyond the jurisdiction of the government under which he was invested with his authority."
There is nothing in that statute preventing an administrator in a foreign jurisdiction from employing an attorney of this state. The record in this appeal conclusively shows that Dr. Ong as executor did employ General Idleman to represent him in the Massachusetts administration as well as in Oregon. The record also discloses that General Idleman did a large amount of work in the Massachusetts jurisdiction. This work was done partially before Dr. Ong was appointed ancillary executor in Massachusetts. Ordinarily the Massachusetts court would have fixed the compensation and expenses of the executor of that state, but no law was violated by the beneficiaries of the estate by arranging as they did to have the whole matter adjusted in the State of Oregon. The executor of the estate in both jurisdictions resides in Oregon and the services were rendered *Page 227 
to him. The decree of the Circuit Court recites that the compensation allowed Dr. Ong for the benefit of General Idleman is for the services in Massachusetts as well as in Oregon. There is no ground then for the argument that General Idleman could apply to the court of Massachusetts for additional compensation.
Complaint is made by the appellants regarding the services of General Idleman in Massachusetts. The complaint is in effect that he did not accomplish anything. It is true that Ames, trustee of a large amount of property belonging to the decedent, refused to account to the executor. He did not base his refusal, however, on the ground that the executor did not have his letters authenticated and with him when the trip was made to Massachusetts. It was the duty of Mr. Ames to have revealed to Dr. Ong, when he was there with his attorney, the property he had belonging to the decedent. He continued to withhold that information and it was necessary for the executor to bring a suit in order to get the information. General Idleman did the necessary work to institute that suit. He should be compensated for it.
Further complaint is made because the report made by General Idleman for the executor to the federal government of the estate tax was inaccurate, although Mr. Price as attorney for appellants stresses this point he admits in his testimony, as well as did his witness, Mr. Montague, that it was very common for such reports to be inaccurate and require revision. Both Mr. Price and Mr. Montague are attorneys of large experience in such matters and it is mentioned by them as the general experience of attorneys to *Page 228 
have to revise such reports. These reports are required to be made in a definite time after the death of the decedent and usually before such estate can be sufficiently administered so as to determine accurately the amount of tax due. It also appears in the testimony that the report made by General Idleman was used by his successor, Mr. Price, in making the final report.
Appellants complain because the learned judge conducting the trial remarked during the cross-examination of the only witness introduced by the contestants, appellants here, touching the reasonableness of the fee:
"I think counsel on both sides are taking up an unnecessary amount of time on the testimony in this case, gentlemen. If counsel had made a statement to me as to what the facts were, I think I would have given just about as good a decision or as bad a decision as I am going to make with all the witnesses that you have here."
The witness being interrogated was an expert witness and his testimony was his opinion. It is claimed by appellants that those remarks with more of the same tenor precluded appellants from introducing further testimony along that line — "that no self-respecting member of the bar would have undertaken to follow" that witness. We do not concur in that view. The learned judge followed that remark with the statement repeated that they could put on other witnesses if they so desired, but that he thought it was unnecessary to do so. We do not believe that the conduct of the court was prejudicial to appellants.
In Re Faling's Estate, 105 Or. 365, 449 *Page 229 
(208 P. 715), Mr. Justice BEAN said: "We may be aided, but not controlled, by the opinion of witnesses."
In Baker v. Multnomah County, decided May 25, 1926, speaking through the same justice, this court said:
"The court should exclude the inference, conclusion or judgment of an expert witness as to the final fact. 22 C.J. 502, § 597."
To the same effect, is Mumper v. Murphy, 212 Ill. App. 52. It was the duty of the court to determine the amount of the fee, and in doing so it could not be controlled by the opinion of experts.
It is the rule of law in this state that the matter of attorney fees being allowed the administrator or executor is largely within the discretion of the trial court: Guardianshipof Thomas Prince, 104 Or. 670, 678 (209 P. 90); Re Assignmentof Woodall, 33 Or. 382, 384 (54 P. 209); Re Assignment ofBank of Oregon, 32 Or. 84, 90 (51 P. 81); Re McCullough'sEstate, 31 Or. 86, 94 (49 P. 886); 21 Cyc. 173. In his opinion the learned judge of the trial court said:
"These legatees, however, should bear in mind that when they asked General Idleman to retire, he had the affairs of the estate well in hand and he could have carried the same to completion with little effort on his part, and these legatees should not now be heard to complain if, because of their action in requesting Mr. Idleman to retire and in their retaining new counsel for the executor, they are required to pay a larger fee than they otherwise would, had General Idleman's services been retained."
10. We infer from the record that General Idleman offended Mr. Ames, trustee, because he attempted to force the latter to make an accounting of his trust. *Page 230 
In this procedure Mr. Idleman was correctly advising the trustee whose duty it was to ascertain and reduce to his possession the property in the hands of the trustee. Dr. Ong testified that in the settlement made by Mr. Ames and the other beneficiaries of the estate it was the "general impression that it would not be entered into unless I secured some other attorney." General Idleman should not be penalized for correctly advising the executor. The executor himself did not make any complaint in his testimony regarding the services of General Idleman. He submitted the value of those services to the Circuit Court and should not now be heard to say that that court was without jurisdiction to determine the matter.
11-13. While we think that the fee of $40,000 is a large fee, yet considering the large amount of work involved, the heavy responsibility, the complications involved in the estate and the extra work required of General Idleman as attorney, a large part of which was caused by the unjustifiable attitude of Mr. Ames, one of the residuary legatees and devisees, requiring the highest degree of care as well as ability in the contest with the guardian as well as trustee of the decedent, we are not prepared to say that the court abused its discretion in allowing that amount. We are of the opinion, however, that there should be deducted from that amount the payments made to Clark, Middleton 
Clark and John F. Logan, because those payments were made for services which should have been attended to by the attorney for the executor. The fees of the other attorneys employed in the contest over the guardianship should not be deducted, because those services were not such as *Page 231 
are ordinarily required of an attorney for an executor, The amount for which General Idleman is entitled to recover, therefore, may be stated as follows toward fee allowed:
Total amount allowed ................................ $40,000 Amount heretofore paid him ................ $12,500 Amount allowed Clark, Middleton 
Clark ................................... 3,000 Amount paid to John F. Logan .............. 3,000 Amount paid to Walter B. Hobbing .......... 350 18,850 _______ Balance due General Idleman ......................... $21,150
One fee only should be allowed attorneys for services rendered the executor during the same period. The decree appealed from will be modified accordingly and affirmed. Neither party will recover costs in this or the Circuit Court.
MODIFIED AND AFFIRMED.
McBRIDE, C.J., and BURNETT and RAND, JJ., concur.