[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 569 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 570 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 572 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 573 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 575 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 576 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 577 
I have sought in vain to find some ground on which to sustain the whole claim of the plaintiff in this case, regarding the defense, as most inequitable and unjust. The plaintiff's services were rendered, and disbursements were paid by him, in good faith, for the protection and preservation of what was deemed Mrs. Blakeman's separate estate, upon her promise and that of her husband of remuneration out of that estate. After she has availed herself of the benefit of those services, she has found reasons, satisfactory to herself it seems, to repudiate her promises, and for setting the plaintiff at defiance. She now interposes, as a shield against his just and equitable claim, certain *Page 578 
provisions of the statute concerning uses and trusts; and for aught I can perceive, must prevail, as far as respects his demand for costs and counsel fees in the suits with Mrs. Bogardus, which arose without the retainer, express or implied, of her trustee.
The deed of Mrs. Blakeman and her husband to Belden of her separate estate, bears date October 7, 1842, and is in trust, to pay out of the rents, income and profits, first, the interest upon certain incumbrances on the trust property; second, the taxes and assessments on the same; third, all necessary expenses incurred in needful repairs on the premises, andfourth, to pay the remainder of such rents, income and profits to Mrs. Blakeman, upon her own separate receipt, notwithstanding her coverture, to the intent and purpose, that the same or any part thereof might not be at the disposal of, or subject to the debts, liabilities or engagements of her husband, or of any future husband she might have, but at her own sole and separate use and disposal, c.; with power to Mrs. B. to dispose of the premises by last will and testament, and in default of such appointment, giving further directions in relation to the disposition of such income after her death. There are other provisions in the deed, not material to the questions in controversy.
The revised statutes concerning uses and trusts provide that "every express trust, valid as such, in its creation, except as "herein otherwise provided, shall vest the whole estate in the "trustees, in law and in equity, subject only to the execution of "the trust. The persons for whose benefit the trust is created, "shall take no estate or interest in the lands, but may enforce "the performance of the trust in equity." (1 R.S. 729, § 60.)
Section 63 of the same statute declares, that "no person beneficially "interested in a trust for the receipt of the rents and "profits of land, can assign, or in any manner dispose of such "interest."
The deed of trust in this case by force of the 60th section,
above cited, vested the whole equitable as well as the legal estate in the trustee; and all that Mrs. Blakeman the beneficiary had *Page 579 
left, was an equitable right, which she could enforce against the trustee, but which, by the 63d section, she is declared incapable of assigning or otherwise disposing of. It is an error therefore, it seems to me, to call this right a separate estate. It is no estate whatever. Certain duties are devolved upon the trustee which the court would require him to discharge, among which is that of paying the remainder of the income, after discharging the prior obligations, to Mrs. Blakeman. Before she receives them, she has no power of disposition of them. She could not create a lien upon them for any purpose whatever, without the co-operation of her trustee. The plaintiff cannot in any event reach them under the 57th section of the statute, for the reason that he does not stand in the relation of creditor of thecestuis que trust. He was not a creditor in the sense of that section, because Mrs. Blakeman was a feme covert, at the time of the retainers and the rendition of the plaintiff's services, and incompetent to contract a debt.
But with respect to so much of the plaintiff's claim as relates to his costs and counsel fees in the two suits last mentioned in the bill of complaint, I think it may be sustained. In those suits, Belden, the trustee, was made a party defendant. The object of them was to set aside the deed and subject the trust property to debts owing by Blakeman, the husband, and thus defeat the principal, if not the only object of the trust. Belden was unwilling to incur any personal liability in their defense, and in my judgment it was competent for him to give the plaintiff a lien upon the future receipts of income, for the purpose of defending the trust estate against the creditors of Blakeman. He was not bound to pay out his own money, or to incur personal responsibility, and it does not appear that he had any funds in his hands applicable to such purposes. That it was his duty as trustee to resist the assaults that were making, so far as he was able, without advancing his own funds, or involving himself in personal responsibility, there cannot be a shadow of doubt; and if competent counsel could be found who would undertake the defenses, relying upon future receipts of income for his compensation, *Page 580 
it seems clear to me, it was his duty to pledge the income for that purpose. If he had advanced his own means, or given his personal liability, he would clearly have had a lien upon the incoming rents and profits for the purpose of reimbursing or indemnifying himself; (Hide v. Haywood, 2 Atk. 126; Balch
v. Halsham, 1 P. Wms. 455; Caffrey v. Darby, 6 Ves. 497; Warral v. Hartford, 8 Id. 8; Dawson v. Clark, 18.Id. 254; Wilkinson v. Wilkinson, 2 Sim. Stu. 237;) and there is no rule of law or equity within my knowledge which would prevent his assigning that lien, if necessary for the protection of his cestuis que trust. The deed, it is true, does not, in terms, contemplate any other appropriation of the rents and profits, than for the objects specified. But what then? Shall the trustee stand by quietly and see the objects of the trust utterly frustrated? It would be a reproach with which the law is not to be made chargeable. Rather than suffer it, the law will infuse into the trust deed a provision to enable the trustee to exercise the necessary power, if possible, to prevent it.
It is undoubtedly true as a general rule, that where a trustee employs agents in the execution of his trust, they are to look to him individually, and have no lien upon the trust fund for their compensation. If he is in funds he is bound to protect the estate, in which case he has no lien, and consequently cannot assign any, having none to assign. But being without funds, and a necessity arising for expenditures in order to protect the estate from spoliation, he may either make them himself, and be allowed for them in the passing of his accounts, or may engage others to do it upon the credit of the fund, reserving to himself the same management and direction as in any other case, and thus avoid the objection that he had delegated his trust. The latter, I think, is substantially this case.
If I am correct, the judgment of the superior court should be affirmed in toto. No costs of these appeals to be allowed to either party as against the other. *Page 581