## SUPREME COURT.

MARY E. C. THEBAUD agt. JULIA M. SCHERMERHORN.

*Married women — Marriage contracts — Trusts created by a woman contemplating marriage — The act of 1849 (Laws of 1849), chap. 375, inapplicable to a trust created by a beneficiary herself, after the passage of the enabling act of 1848.*

The plaintiff, in 1857, in contemplation of marriage, gave her property by a trust deed to trustees to pay her the income for life, with a provision for her husband if he survived her; but if she survived, the property was to go to such person or persons as she might by will direct, and in default of a devise by her it was to descend to her heirs. The plaintiff survived her husband and remarried; and subsequently, in 1872, the trust property was reconveyed to her by the surviving trustee, under the provisions of the act of 1849:

*Held* (in an action for the partition of some of this property which plaintiff held as tenant in common with one of the defendants), that plaintiff, by the trust deed, divested herself of all her estate in the property, and that she cannot recall the trust; that the Supreme Court, before the act of 1849, had not power to destroy such trust, and said act did not give authority for its extinguishment, the purpose of the act being to enable trustees, after the act of 1848 had freed married women from their peculiar disabilities, to reconvey to the beneficiaries trusts created prior to that act for the benefit of women contemplating marriage.

*Special Term, June,* 1881.

*T. James Glover* and *T. J. Barry,* for plaintiff.

*E. M. Felt,* for defendant.

LARREMORE, *J.*— This case was submitted on the pleadings, and the facts therein alleged are assumed to be true for the purposes of this adjudication. On October 27, 1857, Mary E. Guibert (the plaintiff), then unmarried, entered into a tripartite agreement between herself of the first part, James T. Guibert and John C. Corp of the second part, and Charles

Henry Clark of the third part, which recites that the party of the first part is seized and possessed of certain real and personal property; that she is about to marry the party of the third part; that it is the true intent and meaning of the agreement that all of her said property should be vested in trust for her sole and separate use and benefit during her life, free from any restraints, disabilities or liabilities of coverture. To this end she conveyed and assigned to the parties of the second part and the survivor of them all her property as aforesaid, upon the trusts therein mentioned, to collect the rents and income thereof, and after deducting therefrom certain payments and expenditures, to apply the balance thereof from time to time to and for her use, support and maintenance during her life. The parties of the second part, as such trustees, were given full power to sell and transfer the property in their discretion, and reinvest the proceeds thereof upon the same trust. The agreement further provided that, in case of her death after the solemnization of the contemplated marriage, leaving the party of the third part her surviving, the trustees were to convey and transfer the trust estate, or so much thereof as might then be held or possessed, to such person or persons and in such way and manner as she by will, or instrument in writing in the nature of a will, should devise, limit or appoint, which right is expressly reserved. In default of such devise or appointment, the trustees were directed to pay and deliver to the party of the third part absolutely one-half of her personal estate and the interest and income thereon; the other one-half thereof to be paid and delivered to such person or persons, and in the same manner as the same would have descended if she had been a *femme sole* and had died intestate. In the event above stated one-half of the net rents and income of the real estate were to be applied to the use of the party of the third part during his natural life, the other one-half thereof to the use of such person or persons as would be the right heirs of the party of the first part if she were a *femme sole* and had died intestate; and upon the death

of said party of the third part to convey, transfer and make over, in like manner as last stated, the real estate and the proceeds and income thereof. It was in the agreement further provided that if the party thereto of the first part should survive the party of the third part, and fail to devise or limit the trust estate, then upon her death the same should be conveyed and made over to such person or persons, and in the same manner, shares and proportions, as the said estate would have descended if such agreement had not been made. The parties to the agreement bound themselves by mutual covenants to fulfill the trusts therein created.

The plaintiff intermarried with the party of the third part November 3, 1857, who died March 20, 1862, leaving issue of such marriage William G. Clark, now living and of full age.

Thereafter and on June 5, 1865, the plaintiff intermarried with the defendant Paul L. Thebaud, of which marriage there is issue Paul G. Thebaud, now living and a minor.

James T. Guibert, one of the trustees, died March 11, 1868, and thereafter John C. Corp, the surviving trustee, continued in possession of the trust estate until March 28, 1872, when he reconveyed the same to the plaintiff. This was done in pursuance of a written request of the plaintiff, accompanied by a certificate of a justice of the supreme court according to the provision of an act of the legislature passed April 11, 1849 (*Session Laws*, 1849, *chap.* 375).

If the trust had been limited to the life of the party of the third part it might well be claimed that the purpose for which it was created had ceased. But the settler saw fit to make provision for a subsequent event — that of her survivorship — and thus expressly continued the trust as to the property in question. In such case the estate, upon her failure to devise or limit it, was to be conveyed and made over to such person or persons and in the same manner, shares and proportions, as the same would have descended if such agreement had not been made.

It has been held since the Revised Statutes took effect, that where lands have been conveyed to trustees to receive the rents and pay them over to a married woman for her sole use during her life, the trustees were vested with both the legal and equitable estate, subject only to the execution of the trust (*Noyes* agt. *Blakeman*, 6 *N. Y.*, 567). In that case the right of appointment by devise was also reserved, but the court refused to sustain a lien upon the interest of the *cestui que trust* or in the future income.

At this period of our jurisprudence it is unnecessary to examine in detail the disabilities of married women at common law. The attempt made to incorporate a remedy in the organic law of the state (constitutional convention, 1846) resulted in the enactment of statutes expressive of the popular will. Independent of the enabling acts of 1848 and 1849, the principle established by the case above mentioned is applicable to the issue herein involved. By her conveyance the plaintiff divested herself of all her estate in the property therein described. She could limit the remainder, but if she failed to make such limitation, her heirs at law or next of kin would, by her own direction, acquire a vested right in the property. She created an active trust, conferring the power of management and disposition of her estate upon her trustees (*Anderson* agt. *Mather*, 44 *N. Y.*, 249). Can she now recall it ? Can her trustees evade it ?

The case of *McWhorter* agt. *Agnew* (6 *Paige*, 111) involved a similar trust. The wife having survived the husband, the equitable estate being limited to her for life, it was held, by the operation of the rule in *Shelly's case*, that an unlimited power of appointing the inheritance by will united itself with the equitable estate in remainder to her heirs generally, so as to create in her an equitable estate in fee ; that the legal estate having been united with such equitable fee by a conveyance from the trustee, the *cestui que trust* acquired an absolute title to the property. The trust thus decided to be extinguished was created in November, 1818, and the

chancellor regarded the power of appointment by will reserved as appendant or appurtenant to the equitable estate. It was strongly intimated, however, that such ruling would not apply to a power in trust for the benefit of others who also have an interest in the execution thereof.

Under the provisions of the tripartite trust agreement and deed executed by plaintiff, her heirs-at-law and next of kin have at least a contingent interest in the property conveyed and assigned, and, moreover, the " rule in *Shelly's case*" was abrogated in 1830.

The Revised Statutes also made radical changes respecting trust estates. They enact that every person "who by grant, assignment or devise now is or hereafter shall be entitled to the actual possession of lands and the receipt of the rents and profits thereof, in law and in equity, shall be deemed to have a legal estate therein " (*R. S., part* 2, *title* 2, *art.* 2, *chap.* 1, *sec.* 47). But the next section (48) declares that " the last preceding section shall not divest the estate of any trustee where the title of such trustee is not merely nominal, but is connected with some power of actual disposition or management in relation to the lands which are the subject of the trust." The trust created by the plaintiff is one of a class which the revisers obviously did not intend to abolish, and for which provision is expressly made (*R. S., part* 2, *title* 2, *art.* 2, *chap.* 1, *sec.* 55 [3]).

In the case of *Douglas* agt. *Curger* (80 *N. Y.*, 15), the court of appeals refused to sanction the extinguishment of a trust somewhat analogous to the one under consideration. In the opinion per EARL, J., occurs the following language : " The supreme court has not the power to destroy a valid trust. The purpose of the statute was to make these trust estates and trust interests indestructible, and absolutely inalienable during the existence of the trust; and if they could be rendered alienable by the order of the court, the whole scheme of the statute would be greatly impaired and

its purposes thwarted" (*See, also, Wright* agt. *Miller*, 8 *N. Y.*, 9).

It is claimed that authority for the extinguishment of this trust is to be derived from the act of April 11, 1849 (*Session Laws* 1849, *chap.* 375). The second section of this act provides that any person who may hold or may hereafter hold, as trustee for any married woman, any real or personal estate or other property, under any deed of conveyance or otherwise, on the written request of such married woman, accompanied by a certificate of a justice of the supreme court that he has examined the condition and situation of the property, and made due inquiry into the capacity of such married woman to manage and control the same, may convey to her by deed or otherwise all or any portion of such property, or the rents, issues or profits thereof for her sole and separate use and benefit. The third section thereof provides that all contracts made between parties in contemplation of marriage shall remain in full force after such marriage takes effect.

The important question here is, what was the intention of the legislature in passing the act last named? Previous to the enabling acts of 1848 and 1849, trusts created by a woman contemplating marriage, or by other persons for her benefit, were sanctioned and even favored by the courts as a method of protecting a woman's property from her husband's creditors and of securing the income of it to herself independent of his control. The act of April 7, 1848 (*Laws* 1848, *chap.* 200) vested absolutely in a married woman the title of her property, real and personal, free and clear from any right or claim of her husband. The act of 1849 above quoted was a natural sequel to the prior act. The reason for the creation and continuance of such trusts has been obviated by the statute, and it was just and proper to authorize the trustees thereof to extinguish them by conveying the property held thereunder to the beneficiary in fee. I have not found any adjudged case in which the act of 1849 has been held applicable to a trust created by a beneficiary herself, and, in my judgment,

it has no application to a trust of this character created by such beneficiary after the passage of such enabling acts. The legislation of 1848 freed her from her peculiar disabilities, and, if in face of this wholesome provision in her favor, a married woman deliberately creates a valid trust upon her property, it must be regarded as the act of any other person, and she must abide its consequences.

The trust, then, is still in existence, and upon it depends a contingent remainder which will vest upon the death of the *cestui que trust* if she fails to limit the right of succession. As the trustee had no legal power to extinguish the trust, the reconveyance of March 28, 1872, if effectual for any purpose, was impressed with it.

If this conclusion be correct, plaintiff has no status in an action for partition. She is neither a joint tenant nor tenant in common having an estate of inheritance or for life or for years in the premises in question (*Sec.* 1532, *Code Civ. Pro.*; *Brevoort* agt. *Brevoort,* 70 *N. Y.,* 136; *Jenkins* agt. *Fabry,* 73 *N. Y.,* 355).