cur within a comparatively short period of time. The suffering caused by the broken shoulder rendered him feeble and debilitated, and when this condition was aggravated by two weeks of la grippe, it is easy to understand that he could have but little hope of prolonging his life for any extended period. It was at this time that he executed the deeds, and all the circumstances surrounding their execution seem to lead irresistibly to the conclusion that he made the conveyances in contemplation of death. This conclusion receives additional force from the fact that he died nine days after the execution of the deeds. Matter of Birdsall, 22 Misc. Rep. 180, 49 N. Y. Supp. 450, affirmed 43 App. Div. 624, 60 N. Y. Supp. 1133; Matter of Price, 62 Misc. Rep. 149, 116 N. Y. Supp. 283; Matter of Palmer, 117 App. Div. 360, 102 N. Y. Supp. 236. The appraiser, therefore, was correct in holding that this property passed to the decedent's wife as a gift in contemplation of death. But as she was entitled to her dower in the real estate so conveyed, the value of such dower should be deducted from the appraised value of the real estate. That part of the real estate described as parcel 1, which was conveyed to the decedent and his wife at the time of its purchase, was held by them as tenants by the entirety. Therefore she took this parcel upon the decedent's death by virtue of her right as such tenant by the entirety, and not as a gift made by the decedent to her. It is therefore not subject to a transfer tax.

The order fixing tax will be reversed and the appraiser's report remitted to him for correction as indicated.

---

(85 Misc. Rep. 298)

### In re TOD et al. (No. 1.)

(Surrogate's Court, New York County. April 21, 1914.)

1. WILLS (§ 680*) — TESTAMENTARY TRUSTS — DISPOSITION OF EXTRAORDINARY DIVIDENDS AS BETWEEN LIFE BENEFICIARY AND REMAINDERMEN — INTENTION OF TESTATOR.

Where a will creating a trust in favor of life beneficiaries and remaindermen fails to provide for the disposition of extraordinary dividends issued on corporate stock forming the corpus of the trust, the court must determine the intention of testator by the application of equitable rules of construction.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1594–1598; Dec. Dig. § 680.*]

2. COURTS (§ 91*)—PRECEDENTS—CONCLUSIVE DECISIONS.

By the common law the decisions of a court of last resort are binding on all subordinate tribunals, and an inferior court may not infer that there is any inconsistency or contradiction between the later and earlier decisions of a court of last resort.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 313, 325, 326; Dec. Dig. § 91.*]

3. COURTS (§ 91*)—PRECEDENTS—CONCLUSIVE DECISIONS.

A decision on a matter of law rendered in a court of last resort is, by the common law, final and irrevocable, not only on the court, but on all citizens, within the jurisdiction, until abrogated by the Legislature.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 313, 325, 326; Dec. Dig. § 91.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

147 N.Y.S.—11

4. COURTS (§ 91\*)—DECISIONS AS PRECEDENTS—EFFECT.

The common law assumes that the latest decision of a court of last resort expresses the correct rule which has always existed.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 313, 325, 326; Dec. Dig. § 91.\*]

5. WILLS (§ 683\*)—TESTAMENTARY TRUSTS—RIGHTS OF BENEFICIARIES.

A will created a trust in stock of a corporation, but made no provision for distribution, as between life tenants and remaindermen, of stock dividends thereon. On the dissolution of the corporation, the trustees received stock in subsidiary corporations which subsequently declared stock dividends, which represented the increased value of the property of the corporation accruing prior to the setting apart of the trust fund and surplus accumulated subsequent to the trust. *Held* that, in ascertaining the rights of the life tenants and remaindermen, the increased value of the assets belong to the remaindermen, and the value of the stock in the subsidiary corporations allotted to the trustees must be ascertained by determining the value of the assets of the corporation at that time, and the value of the trust fund so ascertained must be maintained unimpaired, and the value of the stock after the stock dividend must be ascertained by dividing the entire assets of the corporation at the time of the declaration of the dividend by the total number of original and new shares, and the value of the trust estate at the time of the setting apart to the trust estate the stock of the subsidiary corporations, when divided by the value of the stock after the declaration of the dividend, will give the number of shares to which the corpus of the fund is entitled, and the difference between that number of shares and the entire number issued to the trustees will be the number to which the life beneficiaries are entitled.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1603–1606; Dec. Dig. § 683.\*]

In the matter of the accounting of William S. Tod and others, as trustees of a trust fund created by the will of John Kennedy, deceased. On objections to the account. Decree ordered.

Henry L. de Forest, of New York City, for trustees.

Cadwalader, Wickersham & Taft, of New York City, for Metropolitan Museum of Art and the Presbyterian Hospital in City of New York.

Nash & Jones, of New York City, for Trustees of Columbia University in City of New York.

Augustus Haviland, of New York City, for New York Public Library, Astor, Lenox, and Tilden Foundations.

A. Perry Osborn, of New York City, special guardian.

King & Osborn, for William Becker.

FOWLER, S. This matter, involving large sums and important questions, comes on for hearing on an agreed statement of fact and pursuant to an assignment requested in person by counsel, including that elevated and distinguished member of the bar, Mr. John L. Cadwalader, whose lamented death has since intervened.

"Et ille quidem deploratus, plenus annis abiit, plenus honoribus."

The trustees under the last will and testament of Mr. John S. Kennedy, deceased, have filed an account of their proceedings as such trustees, and objections thereto have been filed by attorneys for the remaindermen and by the special guardian for certain infant remainder-

---

men. The validity of these objections is presented to the surrogate for his determination.

It appears that the late Mr. John S. Kennedy died testate on the 31st day of October, 1909. At the time of his death testator was a resident of our county of New York. His will creates a number of trusts and appoints certain trustees of the trusts so created. The executors are directed to divide the residuary estate of testator into 64 equal parts. A certain number of these parts are given to the trustees "to invest each part in any of the property or securities mentioned in paragraph ninth of this article of my will, to hold the same in trust during the life of each beneficiary and to apply the income thereof to his or her use semiannually or oftener if practicable, and upon the death of such beneficiary to divide such part equally among his or her lawful issue."

The executors under the will duly accounted for their acts as executors, and on the 23d day of February, 1911, they transferred to themselves, as trustees of the trusts created by the will, the corpus of the trust funds which they were directed to hold under the terms of the will. As the objections raised by the various remaindermen are all alike, and refer to the action of the trustees in paying over stock dividends to life tenants, I will confine myself to a consideration of the trusts created for the benefit of William S. Tod. My conclusion touching the action of the trustees of the trusts for Mr. William S. Tod will apply to the trustees' action in respect of the other trusts, where similar objections have been filed.

Among the securities constituting the residuary estate of the testator were certain shares of stock of the Standard Oil Company, a New Jersey corporation. On the 23d day of February, 1911, 300 of these shares of stock were set apart by the executors to constitute a portion of the trust fund to be held by them as trustees of the trusts created for the benefit of William S. Tod, one of the residuary legatees under said will. On June 10, 1911, a further allotment of 200 shares of the same stock was made to the same trustees for the same purpose. Upon the dissolution of the Standard Oil Company of New Jersey, pursuant to the decree of the Supreme Court of the United States and the distribution to the shareholders therein of their proportionate shares of stock in the subsidiary companies, the trustees aforesaid received, on account of the 500 shares of such stock so held by them for the benefit of William S. Tod (in addition to stock in other subsidiary companies of the Standard Oil Company), $5\frac{78085}{983383}$ shares of the stock of the Standard Oil Company of Indiana, an Indiana corporation, and $3\frac{47351}{983383}$ of the capital stock of the Standard Oil Company of Nebraska, a Nebraska corporation. On the 29th of March, 1912, a stock dividend of 2,900 per cent. was declared by the Standard Oil Company of Indiana, to be distributed ratably to the stockholders of record on the 1st day of April, 1912. In accordance with this resolution, the trustees of the trust fund for the benefit of William S. Tod received, on or about May 15, 1912, $147\frac{297699}{983383}$ additional shares of the capital stock of the Standard Oil Company of Indiana as the stock dividend of 2,900 per cent. upon the $5\frac{78085}{983383}$ shares pre-

viously held by them. On the 16th of December, 1912, these $147^{297699}/_{983383}$ shares of the capital stock of the Standard Oil Company of Indiana were paid over, assigned, and delivered by the trustees as income to the life beneficiary of the trust fund at a valuation of $322 a share, and the amount is included by them in their account as a payment of income amounting to $47,431.48.

On the 5th of March, 1912, the Standard Oil Company of Nebraska also declared a stock dividend of 33⅓ per cent., payable to the stockholders of record on the 15th day of March, 1912. The trustees of the fund, held for the benefit of William S. Tod, received on or about April 15, 1912, $1^{15783}/_{983383}$ additional shares of the capital stock of the Standard Oil Company of Nebraska, as the stock dividend of 33⅓ per cent. upon the shares of that corporation previously held by them. These $1^{15783}/_{983383}$ shares were on the 16th day of December, 1912, assigned and delivered by the trustees to the life beneficiary of the trust fund as income, at a valuation of $296 a share.

The objections of the remaindermen, as well as of the special guardian for other infant remaindermen, all relate to the trustees' payments or distributions of the stock dividends, declared by the Standard Oil Company of Indiana on the 29th of March, 1912, and the stock dividends declared by the Standard Oil Company of Nebraska on the 5th of March, 1912. It is apparent that these objections present what is called "the troublesome question" of the better title of life tenants and life beneficiaries, as against remaindermen, to what our Court of Appeals terms "extraordinary dividends." Matter of Osborne, 209 N. Y. 458, 103 N. E. 723, 823.

[1] The question is troublesome only when the will, as in this instance, is silent or fails to provide expressly for the disposition of such extraordinary dividends, for in that event it becomes necessary to determine the intention of the testator. Under such a state of fact, the court determines the intention of the testator by the application of equitable canons of interpretation laid down in adjudged cases of authority. Matter of Osborne, 209 N. Y. 450, 103 N. E. 723, 823, is the latest of such adjudications in order of time.

In Matter of Osborne, the Court of Appeals more distinctly pronounced the rule governing the proper distribution of stock dividends as between life tenants and remaindermen. They say, in substance, that if the language of the will shows that the testator intended that any extraordinary dividend, declared upon the corpus of the trust fund, should be paid to the life beneficiary, such intention should be effectuated by the trustees. An examination of the testator's will, in this particular matter before me, disclosed that he has not indicated an intention that the capital of the fund should be in any way impaired by the payment of income to the life beneficiaries, or that such life tenants should receive the entire amount of those "extraordinary dividends" which diminish the capital of the trust funds. It is conceded that the dividend of 2,900 per cent. declared by the Standard Oil Company of Indiana and the dividend of 33⅓ per cent. declared by the Standard Oil Company of Nebraska were "extraordinary dividends." Therefore, as the late Mr. Kennedy's will discloses no intention that

the extraordinary dividends should be paid to the life tenants, it would seem that the rule stated in Matter of Osborne, supra, is applicable in this matter. It is declared in Matter of Osborne that:

"Extraordinary dividends, payable from the accumulated earnings of the company, whether payable in cash or stock, belong to the life beneficiary, unless they entrench in whole or in part upon the capital of the trust fund as received from the testator or maker of the trust or invested in the stock, in which case such extraordinary dividends should be returned to the trust fund or apportioned between the trust fund and the life beneficiary in such a way as to preserve the integrity of the trust fund." 209 N. Y. 477, 103 N. E. 731.

But it is contended by the learned counsel for the trustees that Matter of Osborne enounces a new rule of division, differing from rules laid down by the same court in earlier adjudications, and that the trustees' action, now and here objected to, was made, relying wholly on the earlier adjudications of the same court, and before the promulgation of the rule declared in Matter of Osborne. I shall stay for a moment to discuss the validity of this contention, for it is one of supreme importance. While not intending to concede that Matter of Osborne enounces a different rule, as claimed by accountants, I shall briefly review the principles which I conceive to be applicable to any contention of this sort. By constitutional adoption the common law of English-speaking peoples is, with certain reservations immaterial here, the fundamental and ultimate law of this great state.

[2] By that law, which has made all English-speaking nations, thus far, stable, law-abiding, and orderly, above all other nations in history, it is the final decision of courts of ultimate resort which alone is binding on all the subordinate tribunals of a common-law state. Campbell v. Campbell (1880) 5 App. Cas. 787, 798; Caledonian Ry. Co. v. Walkers' Trustees (1882) 7 App. Cas. 259, 294, 302. The surrogate is not permitted to infer that there is any inconsistency or contradiction between the later and the earlier decisions of the same high court, for so to do would be contrary to an established principle of the common law itself. As the late Lord Selborne well said:

"If in any possible way a later decision of an ultimate tribunal can be reconciled with earlier decisions, it ought not to be regarded without some unavoidable necessity as conflicting." Caledonian Ry. Co. v. Walkers' Trustees (1882) 7 App. Cas. at page 275.

This is a principle not only of law but of procedure in all common-law governments. It is that principle which gives such great repose and dignity as well to the law of this country as to the law of other English-speaking political communities.

[3] It is a fundamental proposition of the common law that a decision on a matter of law, if once formally rendered in a court of last resort, where the common law is binding, is thereafter final and irrevocable by the court itself, and it can be changed only by act of the Legislature. Otherwise such court would be arrogating to itself the power to change the law of the land, a principle abhorrent to the common law. American governments have thus far proceeded on the common-law principle. The principle, of very early origin and universal application, is that the law laid down by a final Court of Appeal as ratio decidendi, being thereafter clearly binding on all citizens within

the jurisdiction, is also binding on the court itself. Certainly it should be so in any well-ordered state, subject to the common law. Beamish v. Beamish, 9 Ho. of L. Cas. 274, 338, 339; Houldsworth v. City of Glasgow Bank (1880) 5 App. Cas. 317, 335; London St. Tramways Co. v. London County Council (1898) A. C. 375, 379. It is therefore most apparent to me, as Lord Selborne so well said in substance, that there can be no assumption by a tribunal of first instance, proceeding according to the course of the common law, that there has been a change in a rule of property laid down by a court of last resort, also proceeding according to the course of the common law. I should regard it as highly indecorous for me to question this principle.

The doctrine that the ultimate judgment of a court of last resort, when it is determinative of a rule of law, is unchangeable may be said to be the leading characteristic of the administrative justice of English-speaking political communities. While the doctrine judiciis stare was not unknown to Roman law, for Cicero refers to it, it received its greatest application in the law of English-speaking communities. The beneficial result is well known to publicists and jurists alike. To relax this principle and incorporate a power of change at will would be to convert the courts of justice into new legislative organs warring with the powers now committed to the Legislatures, for the power to change the law is in America and in England an exclusive attribute of the Legislature proper.

[4] It is for this reason, among others, that the common law assumes that the last decision of a final tribunal expresses the correct rule always latent in the bosom of the common law. Thus it is that the final judgment of a court of last resort is, as it were, antedated, and in the common-law system such last judgment is assumed to have been true all along. This is the established principle pursuant to which I am fortunately compelled to approach the solution of all these important matters now before me.

That I have correctly stated the principle of the common law I believe. I am aware of no case where the Court of Appeals of this state have ever announced a power in that tribunal at variance with the common-law principles enunciated above. If we examine the decisions often claimed to be reversed, we shall detect no assertion of a power to reverse them. The noted decision on charitable uses in the case of Williams v. Williams, 8 N. Y. 525, was never declared reversed, but its future inapplicability was occasioned by a process of logical differentiation. Holland v. Alcock, 108 N. Y. 331 et seq., 16 N. E. 305, 2 Am. St. Rep. 420; Hope v. Brewer, 136 N. Y. at page 143, 32 N. E. 558, 18 L. R. A. 458. The adjudication in Noyes v. Blakeman, 6 N. Y. 567, was not assumed to be reversed in Matter of Williams, 187 N. Y. 286, 79 N. E. 1019. Townshend v. Frommer, 125 N. Y. 446, 26 N. E. 805, was never reversed, but merely distinguished in Knowlton v. Atkins, 134 N. Y. 313, 31 N. E. 914, and other cases. And so it was with others of the questioned ulterior judgments with which I am at all familiar. None was ever expressly annulled under any assertion of power to change an established rule of law previously laid down by the same court. Of course, it is always open to counsel to contend that

the difference in the facts excludes a later case from the operation of the latest adjudication, but no such contention is now made to me as against the application to this proceeding of the rule stated in Matter of Osborne. I am bound to say, however, that I do not understand that Matter of Osborne does depart from the ratio decidendi of earlier adjudications by the same high court. Matter of Harteau, 204 N. Y. 292, 97 N. E. 726. Matter of Harteau was certainly adjudicated prior to the declaration of the extraordinary dividend by the Standard Oil Company now involved in this proceeding.

[5] I proceed to apply the principle of Matter of Osborne, in so far as I am able, to these matters now before me. From the agreed statement of facts submitted to the surrogate in this proceeding, it appears that the surplus accumulated by the Standard Oil Company of Indiana between the date when the trusts were set up by the trustees herein and the date when the dividend was declared was about $11,945,000. Of this amount $4,904,000 represented the increased value of real estate and plant investment held by the company, and it appears that this increased value had accrued prior to the date when the trust fund was set apart by the trustees to the various cestuis que trustent, including Mr. William S. Tod. In calculating the surplus accumulated by the company between the date when the shares were allotted to the trustees and the date upon which the dividend of 2900 per cent. was declared, this sum of $4,904,000 should be deducted from the gross surplus above given. Thayer v. Burr, 201 N. Y. 155, 94 N. E. 604. The remainder would represent the surplus accumulated by the company between the date upon which the trust fund was set apart to the cestuis que trustent and the date when the extraordinary dividend was declared.

In order to ascertain the value of the trust fund consisting of shares of stock in the Standard Oil Company of Indiana at the time such shares were allotted to the trustees in pursuance of the decree of the United States Supreme Court, the entire assets of the corporation at that time should be divided by the number of shares of stock issued by the company, and the quotient multiplied by the number of shares allotted to the trustees and held in trust for the benefit of William S. Tod. The result would be the value of the shares of the Standard Oil Company of Indiana held by the trustees for the benefit of William S. Tod at the time when the apportionment of the shares of stock in the Standard Oil Company of New Jersey was made pursuant to the decree of the Supreme Court of the United States. The value of the trust fund, as so ascertained, must be maintained unimpaired. The value of each share of stock of the Standard Oil Company of Indiana after the declaration of the stock dividend is ascertained by dividing the entire assets of the corporation at the time of the declaration of the dividend by the entire number of shares, original and new, issued by the company; the quotient will be the value of each share of stock after the declaration of the dividend. Dividing the value of the trust estate at the time when the shares of stock of the Standard Oil Company of Indiana were set apart for the benefit of the trust estate by the value of a share of stock after the declaration of the

dividend will give the number of shares of stock to which the corpus of the fund was entitled; and the difference between that number and the entire number issued to the trustees of the trust estate will be the number to which the life tenant was entitled.

As the trustees have paid the entire extraordinary dividend to the cestuis, or life tenants, they must be surcharged with the number of shares of stock of the Standard Oil Company of Indiana which, at the time of the distribution of the extraordinary dividend, they should have set apart for the remaindermen. This direction also applies mutatis mutandis to the dividend declared by the Standard Oil Company of Nebraska. As the papers now before the surrogate do not contain the necessary data to enable him to apportion the stock dividends between the various life tenants and the remaindermen, the decree to be entered upon the accounting will be held in abeyance until a computation has been made by the parties to this proceeding of the number of shares of stock in the Standard Oil Company of Indiana and the number of shares in the Standard Oil Company of Nebraska which should have been retained by the trustees as part of the corpus of the trust fund at the time the said dividends were declared and paid. This opinion may be taken as the exemplar of that regulating the disposition of all the other objections interposed on the same grounds as those herein discussed.

Proceed accordingly.