Argued March 27, affirmed April 10, 1917.

## IN RE BARKER, A SPENDTHRIFT.
## CLAIM OF WASCHER BROS.

(164 Pac. 382.)

**Spendthrifts—Contracts for Necessaries—Liability of Estate.**

1. Section 1324, L. O. L., provides that, if a guardian shall be appointed, all contracts, excepting for necessaries, made by such spendthrift, shall be void. Section 1326 provides that a guardian so appointed shall have care and custody of person of ward and management of all his estate, etc. Section 1327 requires guardian to pay all just debts due from ward out of ward's estate. A guardian of a spendthrift provided him with sufficient money each month to pay for necessaries. The ward purchased from petitioner articles of food which he consumed, but did not pay for, having squandered money furnished by the guardian. *Held*, that furnishing ward with money was not equivalent to furnishing him with necessaries, and that estate of ward was liable to petitioner for food furnished; the ward having under the circumstances power to contract for necessaries.

[As to sufficiency of instrument to create spendthrift trust, see note in Ann. Cas. 1917B, 400.]

**Courts—Appealable Order or Decree—Rejection of Claim by County Court.**

2. An order of the County Court rejecting a claim against a spendthrift's estate is appealable in view of Section 945, L. O. L., providing that provisions of Chapter 5, Title 7, (Sections 548–560), relating to appeals, are intended to apply to judgments and decrees of the County Courts in all cases.

**Courts—Circuit Court—Powers on Appeal from County Court.**

3. Under Section 559, L. O. L., providing that upon an appeal to the Circuit Court the manner of proceeding thereafter is the same as if the action had been commenced in such court, but if the ap-

peal is from a decree of County Court, the appellate court may give a final decree in the cause or matter, the Circuit Court may enter judgment for claimant on appeal from an order of County Court rejecting claim against estate of a spendthrift.

**Appeal and Error—Extent of Review—Execution Issued by Clerk of Court.**

4.  Where the judgment of the Circuit Court on appeal does not order execution to issue, the promulgation of such writ under Section 213, L. O. L., providing that the party in whose favor a judgment is entered may at any time after entry have a writ of execution, and Section 215, requiring clerk to issue such writ, is not a judicial function subject to review on appeal from judgment of Circuit Court.

Department 1.    Statement by MR. JUSTICE BURNETT.

It appears by the record that the County Court of Multnomah County appointed a guardian for William C. Barker, having adjudged him to be a spendthrift. The petitioners doing business as grocers under the firm name of Wascher Bros., presented a petition to the County Court in which they averred:

"That between the 28th day of November, 1914, and the 20th day of September, 1915, said W. C. Barker did purchase of and from the petitioner herein and his brother F. W. Wascher, co-partners, doing business as Wascher Brothers, goods, wares and merchandise of the agreed price and reasonable value of $473.90, and paid on account thereof the sum of $321.25, leaving a balance due of $152.35; that said goods, wares and merchandise were family necessities and were used by the defendant in and about the maintenance of his home."

They further stated that they had presented their claim to the guardian who refused it on the ground that his ward was a spendthrift without capacity to contract any obligation whatsoever. They alleged in effect that the groceries furnished were necessaries required for the ward's sustenance and that he is possessed of considerable estate with an income in excess of $350 per month.    They prayed for an order of

the County Court compelling the guardian to pay the alleged indebtedness. The court, however, denied the petition. On an appeal to the Circuit Court that tribunal heard the agreed statement of facts and additional testimony, made findings of fact to the effect that the goods furnished were necessaries, gave the petitioners a judgment against the ward for the balance of account amounting to $152.71, and as a further conclusion of law held "that the plaintiff do have execution on demand." The judgment in fact entered was substantially that the plaintiffs have and recover from the defendant Barker the sum of $152.71, together with costs and disbursements herein without ordering execution. It is stated in the abstract that subsequently the petitioners issued execution on the judgment and placed it in the hands of the sheriff of Multnomah County; that an appeal was taken and a supersedeas bond filed; that afterwards the petitioners filed their undertaking notwithstanding the appeal and proceeded with the execution; and that the sheriff made a return showing that he had realized the full amount of the judgment by the sale of an automobile belonging to the ward. There is no official record before us, however, disclosing anything about the proceedings after judgment. An appeal has been taken on behalf of the estate of the spendthrift.

AFFIRMED.

For appellant there was a brief over the names of *Mr. Lynn B. Coovert* and *Mr. E. E. Coovert,* with an oral argument by *Mr. Lynn B. Coovert.*

For respondent there was a brief over the name of *Messrs. Clark & Geneste,* with an oral argument by *Mr. Elmon A. Geneste.*

MR. JUSTICE BURNETT delivered the opinion of the court.

Referring to the guardianship of a spendthrift, it is said in Section 1324, L. O. L.:

"If a guardian shall be appointed on such application, all contracts, *excepting for necessaries,* and all gifts, sales, or transfer of real or personal estate made by such spendthrift, after such filing of the complaint in the county clerk's office, and before the termination of the guardianship, shall be null and void."

In Section 1326, L. O. L., it is provided thus:

"Every guardian so appointed for a spendthrift shall have the care and custody of the person of the ward, and the management of all his estate, until the guardian shall be legally discharged. * * "

Under Section 1327, every guardian is required to—

"pay all just debts due from his ward out of his personal estate, if sufficient, and if not, out of his real estate, upon obtaining a license for the sale thereof, as provided by law."

1. Under the assignments of error it is contended that the articles furnished Barker were not necessaries and that the claim for the same was not valid, as against the estate of the spendthrift. The Circuit Court found that the goods were received and used by Barker in and about the maintenance of his home and that they were family necessities. The agreed statement of facts and the testimony received in addition thereto convinces us that this finding was justified. There seems to be but little contest over the fact that the goods were groceries consisting of articles of food used by the spendthrift. The contention against the decree is that the guardian had placed in the hands of his ward each month ample

83 Or.—45

funds with which he could have supplied himself with what was requisite for his sustenance, and hence that the food which the petitioners furnished him and which he actually consumed, but did not pay for in full, were not necessaries. Some old precedents from other states have been cited which apparently support that argument, but they do not seem to be applicable to our statute. Section 1326, L. O. L., confers upon the guardian the management of all his ward's estate and the following section directs him to pay all just debts due from his ward. To deliver into the latter's hands, therefore, the funds of his estate is at war with the general scheme of guardianship. If the guardian is to manage all the ward's property, as the statute says he must, it is a violation of his duty to commit the control of any considerable portion of it to the spendthrift himself. In good reason he that hath discretion to manage his own property hath no need of a guardian. The very cause for appointing a custodian for the estate of a profligate person is that he is dissipating it and that therefore it is necessary to take from him all authority over it. It seems from the record that instead of applying to his actual necessities the allowance given to him by his guardian, Barker took counsel of his propensities rather than of good judgment and squandered the money, failing to pay in full for the necessaries which the petitioners furnished him. Although he may have wasted his allowance in riotous living, still it was imperative for him to live, and, under Section 1326, *supra,* he was entitled to contract for what was requisite to that end, it being within the exception to the general rule declaring all agreements, gifts, sales or transfers of property to be utterly void. To declare that furnishing him money which he ought to have expended in payment

for the essentials furnished, but otherwise wasted, would take from his food, for instance, its character as a necessity, and would be to say that the payment of his just debts could be prevented by a void act. It is true enough that if the guardian or anyone else had in fact provided for his needs in quantity and quality suitable to his income and station in life, anything in addition thereto would not be a necessity; but supplying him money with opportunity to waste it as he chooses is not equivalent to a delivery of what is requisite for his sustenance. He is either qualified to manage his estate or he is not. His competency is not apportionable. He may contract for necessaries under the statute, but if he does not pay for them his estate must respond. The only way to escape this result is for the guardian having the care of the ward to furnish him with such things or cause them to be directly provided for him and not entrust money for that purpose to the spendthrift himself.

2, 3. It is next urged in the brief for the appellant that:

"The court erred in entering any judgment for claimant, even though the claim was for necessaries, it being an appeal from a rejected claim by the county court. All the circuit court could do would be to approve the claim and send it back to the probate court as an approved claim, to be paid in due course of administration."

In support of this argument much reliance is placed upon *Sturgis* v. *Sturgis,* 51 Or. 10 (93 Pac. 696, 131 Am. St. Rep. 724, 15 L. R. A. (N. S.) 1034, note). In that case a spendthrift under guardianship desired to marry a wife but his guardian refused to consent, whereupon he with his betrothed went into another state, was there married, and returned to Oregon. In the course of events the wife began a suit against

the spendthrift husband for a divorce, making the guardian a party defendant so as to subject the husband's estate to the payment of alimony. After hearing upon affidavit the court ordered that the defendants pay to the clerk thereof $150 as suit money and $50 as temporary alimony each month during the pendency of the litigation. The guardian appealed and this court held that the judgment against him was erroneous; that the order of the Circuit Court merely established a liability against the ward, but that it could be enforced against his estate only through the process of the County Court in granting a license to the guardian to sell realty if the personal property of the ward was insufficient to pay the debt.

We may well doubt, as a general principle, that a court which has jurisdiction to render a judgment or decree has not the authority to enforce it. Indeed, it is said in Section 983, L. O. L.:

"When jurisdiction is, by the organic law of this state, or by this code or any other statute, conferred on a court or judicial officer, all the means to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of proceeding be not specifically pointed out by this code, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code."

It is not necessary, however, to further criticise *Sturgis* v. *Sturgis,* 51 Or. 10 (93 Pac. 696, 131 Am. St. Rep. 724, 15 L. R. A. (N. S.) 1034). In Section 936, L. O. L., we find:

"The county court has the exclusive jurisdiction in the first instance pertaining to a court of probate, * * (3) to direct and control the conduct and settle the accounts of executors, administrators and guardians."

It proceeds in a manner analogous to the conduct of a suit in equity as distinguished from an action at law

and its decisions are embodied in the form of orders and decrees: Sections 1135, L. O. L. These are subject to the right of appeal to the Circuit Court under Section 945, L. O. L. It is provided in Section 559, as follows:

"The decision of the appellate court shall be given and enforced as provided in this section:— * * (3) Upon an appeal to the Circuit Court, the manner of proceeding thereafter is the same as if the action or suit had been commenced in such court; but if the appeal be from a decree of the county court, the appellate court may give a final decree in the cause or matter, to be enforced as a decree of such court, or such decree as may be proper, and direct that the cause or matter be remitted to the court below for further proceedings in accordance therewith. * * "

Writing about this section in *Re Plunkett's Estate,* 33 Or. 414, 417 (54 Pac. 152), Mr. Justice WOLVERTON laid down the rule thus:

"A trial *de novo* precludes the idea of a direction to the lower court to retry the issues upon which it has once passed, and which stand for trial in the circuit court on the appeal, as the effect of such a proceeding would be to grant a new trial, which is subject matter for the court of original jurisdiction only. By intendment of subdivision 3, *supra,* the decree of the circuit court becomes final upon the matter in hand, which it may enforce through its own process, or direct that it be remitted to the county court, with directions to take such other action in the premises as may seem proper, but always in harmony with the decree of the circuit court. It does not contemplate an affirmance or reversal for errors that may appear of record, but a final adjudication touching the matter thus brought on for hearing, which may be enforced as a decree of that court, or, if remitted, controls the future proceedings of the county court."

The Sturgis Case was one of original jurisdiction in the Circuit Court. The case in hand was treated by that court on appeal. In its character as an appellate tribunal it had power to carry into effect its own decree under Section 559, L. O. L., describing how the decision on appeal may be enforced. There was ample authority for an execution on the decree rendered, because it was that of the Circuit Court sitting as an appellate tribunal.

4. Another answer to the contention of the appellant on this subject is that where an execution is not ordered by the terms of the judgment itself, the promulgation of such writ is not a judicial act. Under Section 213, L. O. L.—

"The party in whose favor a judgment is given, which requires the payment of money, * * may at any time after the entry thereof have a writ of execution issued for its enforcement, as provided in this chapter."

By Section 215, L. O. L., the clerk is required to issue the writ and direct it to the sheriff. Hence it is not a judicial function in any sense of the word, but purely ministerial at the request of a party. This court does not review such acts, but only judgments or decrees as provided by Section 548, L. O. L. We have nothing to do with the means by which the payment of a judgment may be enforced. If the wrong process for collection has been employed the grievance must be worked out by some other procedure than by an appeal from the judgment or decree upon which it is based. These considerations lead to an affirmance of the decree of the Circuit Court.    Affirmed.

Mr. Chief Justice McBride, Mr. Justice Moore and Mr. Justice Benson concur.