David W. Mumper, Administrator of the Estate of Anna E. Hopkins, Deceased, Appellee, v. John P. Murphy, Objector, Appellant.

David W. Mumper, Administrator of the Estate of Louise M. Murphy, Deceased, Appellee, v. John P. Murphy, Objector, Appellant.

1. EXECUTORS AND ADMINISTRATORS, § 340*—*when administrator acting for estate of testatrix and heir should pay money to himself as administrator and disburse funds.* Where the same administrator acts for both the estate of a testatrix and of her deceased heir and about eleven months after the granting of letters of administration of the estate of the testatrix, and, at a time when only one claim is disputed and has not been paid, he draws money from savings banks where it has been drawing interest, he should not deposit it in his own account but should pay it over to himself as administrator of the estate of the heir, and then to the assignee or trustee of the estate of the heir of testatrix's heir, simply retaining sufficient to secure the result of the particular claim.

2. EXECUTORS AND ADMINISTRATORS, § 559*—*what principle governs in allowance of compensation to administrator.* The princi-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

ple upon which a court ordinarily acts in allowing an administrator compensation is to allow a reasonable compensation, keeping in view the circumstances of the particular case.

3. EXECUTORS AND ADMINISTRATORS, § 561*—*when finding as to amount of compensation to be allowed administrator may be modified.* The finding of the trial court as to the amount of compensation to be allowed an administrator does not preclude a court of appeal from fixing the compensation at a less sum· that that fixed by the trial court.

4. EXECUTORS AND ADMINISTRATORS, § 561*—*when compensation of administrator fixed at 3 per cent.* The amount of compensation to be allowed an administrator was fixed at 3 per cent where there was very little work connected with the handling of the estate, the assets of which were about $35,000, consisting almost entirely of money in banks, and the administrator withdrew about $20,000 from savings banks where it was drawing interest at 3½ per cent and held it for nearly a year before filing an account.

5. EXECUTORS AND ADMINISTRATORS, § 561*—*when compensation of administrator fixed at 3 per cent.* Where an administrator acted as such for both the estate of a testatrix and that of an heir and paid the money to the assignee of the heir of the second estate within 15 days after he receipted to himself as administrator in the first estate and did not put the second estate to any expense in securing a bond, the amount of compensation to be allowed the administrator in handling the second estate was fixed at 3 per cent on the basis of an estate of about $24,000.

6. EXECUTORS AND ADMINISTRATORS, § 526*—*compensation administrator should pay attorney.* Where an administrator retains an attorney he should pay him only such a reasonable compensation as reputable attorneys would contract to render service for.

7. EXECUTORS AND ADMINISTRATORS, § 526*—*right and duty of courts to exercise independent judgment in fixing attorney's fees.* Courts have some knowledge concerning the value of an attorney's services in acting for an administrator, and a court may to some extent and should exercise an independent judgment in passing on the amount to be allowed in any particular case.

8. EXECUTORS AND ADMINISTRATORS, § 526*—*when custom as to charges of attorney employed by administrator is not binding on courts.* A custom among attorneys in a county to charge 4 per cent on the entire personal property, as a minimum, for their services, where an administrator retains an attorney, is unreasonable and is not conclusive on the courts.

9. EXECUTORS AND ADMINISTRATORS, § 526*—*when allowance for attorney's fees is excessive.* An allowance to an administrator of

*See Illinois Notes Digest, Vols. XI to XV,·and Cumulative Quarterly, same topic and section number.

the sum of $1,500 for the services of an attorney in handling an estate amounting to $35,000, and consisting almost entirely of money in banks, *held* excessive and reduced to $800, where there was little for an attorney to do.

10. EXECUTORS AND ADMINISTRATORS, § 526*—*when allowance of attorney's fees is excessive.* An allowance to an administrator of the sum of $950 for the services of an attorney in the handling of an estate consisting of about $24,000 in money, *held* excessive and reduced to $300, where there was little for an attorney to do.

Appeal from the Circuit Court of Adams county; the Hon. ALBERT AKERS, Judge, presiding. Heard in this court at the October term, 1917. Reversed and remanded with directions. Opinion filed April 19, 1918. *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.** Anna E. Hopkins died at Quincy, Illinois, testate. The will was admitted to probate in Adams county in October, 1913, and David W. Mumper, public administrator, on his petition was appointed and qualified as administrator on the day the will was probated. The personal estate consisted of household goods, which were sold for $136.70, and something over $34,000 on deposit in three different Quincy banks. Louise M. Murphy of Los Angeles, California, a sister of the deceased, was the only heir, and the principal legatee under the will. The only other legacies under the will were $1,000 to St. Mary's Hospital; $500 to St. Vincent's Home; $500 to Rev. J. M. Foley, and $100 to the Rector of St. Peter's Church.

Louise M. Murphy, the principal legatee, died at Los Angeles, California, December 21, 1913, leaving James Murphy of Ireland as her only heir, and he assigned his title to her estate to John P. Murphy, trustee. On January 14, 1914, David W. Mumper, public administrator for Adams county, on his petition, was appointed administrator of the estate of Louise M. Murphy.

The entire claims presented against the estate of

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Anna E. Hopkins did not amount to over $100, not including funeral expenses, with the exception of a claim for $300 for a memorial window, which was allowed without objection, and a claim for $2,900, which was allowed in April, 1914, through a misunderstanding. The administrator employed one W. H. Bennett as his attorney in both estates. The heir of Louise M. Murphy and his assignee and trustee were nonresidents of Illinois, and neither they nor the administrator of Anna E. Hopkins appear to have learned of the allowance of this claim until the following November, when the heir employed other counsel, and a joint motion was entered in the Probate Court by the assignee of the heir and the administrator of the Hopkins estate to set aside the allowance of that claim. The court refused to vacate the order. An appeal was perfected to the Circuit Court, where a demurrer to the petition was sustained and judgment rendered that "appellee go hence without day." An appeal from that judgment was perfected by the administrator to the Appellate Court, which reversed the judgment and directed the Circuit Court to vacate the order of allowance and hear the claim on its merits. *St. Rose of Lima Congregation v. Hopkins' Estate*, 201 Ill. App. 316. A petition for rehearing in the Appellate Court was denied in June, 1916, but the case was not redocketed in the Adams Circuit Court until October, 1916, and in December the claim was settled without a trial by the payment of $1,000.

At the time of the death of Anna E. Hopkins, she had on deposit $174 in a checking account in the Ricker National Bank; $1,225.20 and $11,000 in savings accounts in the Ricker National Bank drawing interest at 3½ per cent; $10,642.73 in a savings account drawing interest at 3 per cent in the Quincy National Bank, and $11,000 in the State Savings, Loan and Trust Company drawing interest at 3½ per cent. On

December 8, 1913, the administrator drew the $1,225.20 from the Ricker National Bank and the $10,642.73 from the Quincy National Bank. The sums of $11,000 in the Ricker National Bank and in the State Savings, Loan and Trust Company were collected August 1, 1914, with $770 interest on these deposits.

The administrator did not make any report in the Hopkins estate until August 11, 1915. The report shows receipts from the sale of household goods, $136.70, and collected from the various banks $34,889.58, and disbursements amounting to $7,879.24, of which $700 was paid to W. H. Bennett on November 30, 1914, on attorney's fees, and $2,101.51 retained by the administrator for his commissions. In January, 1917, the administrator in the Hopkins estate filed his second account in which he credits himself with the payment to himself as administrator of the Murphy estate on September 2, 1915, of $20,000; on March 14, 1916, $500, and on December 14, 1916, $3,509.05, and the payment on December 13, 1916, of $800 attorney's fees to Bennett in addition to the $700 paid him November 30, 1914.

In January, 1917, he filed an account as administrator of the Murphy estate charging himself with the receipt of the three sums from the Hopkins estate, amounting to $24,009.05, and crediting himself with the payment to John P. Murphy, assignee of the sole heir, various sums from September 25, 1915, to March, 4, 1916, amounting to $17,500; to W. H. Bennett, attorney, $950; to himself, as commission, $1,440.54, and claiming to have $2,654.53 on hand for Murphy if no further costs are made.

Objections were filed by Murphy, the assignee and trustee of the heir of Louise M. Murphy, to the amounts claimed by the administrator in each estate and to the sums claimed to have been paid by him as attorney's fees. All the objections were overruled

by the County Court in both estates. Appeals were perfected to the Circuit Court.

In the Circuit Court, by agreement of counsel, the two cases were consolidated and heard together, that court reducing the commission in the Murphy estate to $720.27 and overruling the other objections. John P. Murphy has appealed to this court.

JESSE HEYLIN, for appellant.

WALTER H. BENNETT, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

In the Hopkins estate there was only $136.70 of household goods to be sold. The remainder of the estate was all on deposit in various Quincy banks. There was only one claim over which there was any contest. The amount claimed was $2,900, and it was settled for $1,000.

In the Murphy estate there was a claim for $3,500 presented which was never tried but was dismissed. All that the administrator did in that estate, beyond attending to the inheritance tax, was to receipt to himself for $24,000, see that he had properly reported in the Hopkins estate, and pay the money to the heir.

There is another feature of the case which should be given some weight in arriving at the amount of commission to be allowed the administrator. There was $10,000 in each of two banks drawing interest at 3½ per cent. On August 1, 1914, the administrator had these sums transferred to his account, thereby stopping them drawing interest. Section 70 of the Administration Act (J. & A. ¶ 119) requires that all claims shall be presented against an estate within one year from the granting of letters or be barred. Section 112 of that Act (J. & A. ¶ 161) requires that the administrator shall make a report of his acts and do-

ings to the court at the first term after the expiration of one year after the date of his letters, or sooner. Letters were granted in the Hopkins estate in October, 1913. All claims except the $2,900 claim were disposed of within the year. The administrator filed no report until August, 1915, nearly a year after he should have made his report, and upwards of a year after the time for presenting claims had expired and after the statute requires that he should have filed his report. Upon his own statement he held $27,000 in his hands during all that time. It was not drawing interest and the major part of it should have been paid over to himself as administrator of Louise M. Murphy and then to the assignee and trustee of her only heir, simply retaining sufficient to secure the result of the $2,900 claim. (*Reynolds v. People,* 55 Ill. 328; *Curts v. Brooks,* 71 Ill. 128.) The deceased kept her money in a bank which allowed her interest.

The administrator, not being required to keep it invested, changed it so that it did not draw interest for the benefit of the estate, and retained it nearly a year after all, but the small proportion necessary to provide for the $2,900 claim, with the costs and expenses, should have been paid to Murphy. Section 114 of the Administration Act (J. & A. ¶ 163), which was adopted when the statute allowed two years for the presentation of claims, which is now changed to one year, provides that all moneys which any administrator may have in his possession after two years and six months from the date of his letters of administration shall bear interest and he shall be charged interest from said time at the rate of 10 per cent, unless good cause is shown.

There was evidence submitted concerning the allowance to be made to administrators in the settlement of estates. The weight of the evidence as to the allowance of commission is that 6 per cent on the personal estate is the minimum allowance in Adams

county. Under the statute, 6 per cent is the maximum sum that may be allowed. In both estates there was but little to do. The statute provides that "not exceeding six per cent on the amount of the personal estate" shall be allowed administrators as compensation for their services. The principle upon which a court ordinarily acts is to allow a reasonable compensation, keeping in view the facts and circumstances of each particular case. The finding of the trial court does not preclude a court of appeal from fixing the compensation at a less sum than that fixed by the trial court. *Giger v. Bishop*, 231 Ill. 472, 135 Ill. App. 448; *Colton v. Coffey*, 187 Ill. App. 558. When the amount of work done by the administrator in the Hopkins estate is considered together with the unreasonable detention of the amount of money in his hands, and with the fact that he withdrew the bank deposits from the savings departments over a year before he filed any account, a compensation of 3 per cent would be a very liberal allowance.

In the Murphy estate, in view of the fact that the money was paid to the assignee of the heir fifteen days after he receipted to himself as administrator in the Hopkins estate and did not put the estate to any expense in securing a bond, we cannot say that the Circuit Court erred in allowing 3 per cent, although that allowance was liberal.

The Circuit Court allowed, to the administrator, credit for payment to Bennett as attorney's fees of the modest sums of $1,500 in the Hopkins estate and $950 in the Murphy estate. Several attorneys testified that in that county there is a rule that 4 per cent on the entire personal estate is the minimum allowance for attorney's fees, where the administrator retains an attorney, no matter how little the service of an attorney may be required; an ex-county judge and other witnesses testified that there is no such rule. If such a rule prevails, then estates there are exploited for the

benefit of attorneys and administrators. They should receive such a reasonable compensation as reputable attorneys would contract to render service for, with a person capable of contracting for the services and making a contract in a matter wherein he was interested.

There was but little for an attorney to do in either estate, although there was a contest over the St. Rose of Lima Congregation claim of $2,900. It became necessary for the heir to employ other counsel, and the evidence shows that counsel for the heir prepared the brief in the Appellate Court and the claim was finally settled without a trial for $1,000.

In the Murphy estate a claim was presented for $3,500, which does not appear to have had any foundation as it was dismissed without a trial.

Courts have some knowledge concerning the value of an attorney's services, and a court may to some extent and should exercise an independent judgment in passing on questions concerning the amount to be allowed an attorney in any case. *Giger v. Bishop,* 231 Ill. 472; *Colton v. Coffey,* 187 Ill. App. 558, and cases cited. The evidence of the attorneys who testified against the estate in this case is that there is an unreasonable custom in that county which is not conclusive on any court. *Zentner v. Kozminski,* 171 Ill. App. 570. The attorney who drew the will of Mrs. Hopkins and had acted for her in her lifetime procured the probate of the will. The public administrator then was appointed, and he employed the attorney to whom the payments were made, and who took so little interest in the estate that although he knew a claim for $2,900 had been presented and that the administrator had asked for time to consider it, it was wrongfully allowed, and neither he nor the administrator knew of the allowance for several months thereafter.

An attorney should be paid for necessary legal services performed. He does not, however, take the place

of an administrator and become entitled to a commission on the entire estate.

If the assignee of the heir to the estate had not employed additional counsel, and the attorney who acted for the administrator had alone rendered all the legal services performed, the sum of $800 would be a very liberal allowance for all his legal services rendered in the Hopkins estate, and, for the services in the Murphy estate, $300 is a reasonable and ample compensation. The order of the trial court overruling the exceptions is reversed and the cause remanded with instructions to reduce the compensation of the administrator in the Hopkins estate to 3 per cent, and the attorney's fees in the Hopkins estate to $800 and the Murphy estate to $300, the costs of this appeal to be paid by the administrator personally.

*Reversed and remanded with directions.*