On motion to dismiss appeal. Motion denied December 27, 1923, argued on the merits March 3, modified and affirmed June 1, 1926.

# Re THOMAS PRINCE ESTATE.

## H. F. ONG, Exr., et al. *v.* C. M. IDLEMAN.

### (221 Pac. 554; 246 Pac. 713.)

**Appeal and Error—Appeal Held to be from Decree on Final Accounting, Directing Payment of Attorney's Bill for Services to Executor and not from Interlocutory Order Fixing Fee—"Final Decree."**

1. Where probate court made an order directing the executor to pay an attorney's fee, and ten days later made a decree reciting that the hearing was on executor's final account, approving the account, and further stating that a bill for legal services rendered executor had been filed, and that residuary legatees had objected to the allowance thereof, and that the amount was reasonable, a notice of appeal from the first order and also from that part of the second order fixing the attorney's fee was not objectionable as being an appeal from the interlocutory order, but was from the final decree within Sections 548–550, 945, 1285–1287, Or. L., providing for appeal, though it did not state the second order was on final settlement.

**Appeal and Error—Service of Notice on Legatee of Appeal from Allowance of Attorney's Fee not Necessary, not Being an "Adverse Party."**

2. Where the notice of appeal from a decree fixing the fees of an attorney who rendered services to the executor was not served on one of the legatees of the will who appeared in the proceedings and was a party to the decree, the failure to serve him did not affect the jurisdiction of the court, where he was not an adverse party within the meaning of Section 550, Or. L., having no interest in sustaining the decree from which the appeal was taken.

### ON THE MERITS.

**Executors and Administrators.**

3. Executor is personally liable to attorney for services in assisting administration of estate.

**Executors and Administrators.**

4. Executor is allowed expenses incurred in administration of estate, including reasonable attorney fees, under Section 1290, Or. L.

---

2. See 2 R. C. L. 109.

3. Liability of estate to attorney employed by executor or administrator, see note in 25 L. R. A. (N. S.) 72. See, also, 11 R. C. L. 235.

4. See 11 R. C. L. 234.

**Executors and Administrators—Reasonableness of Attorney Fees Depends on Amount, Nature and Length of Services, Amount of Estate, Ability and Skill Required, and Training of Attorney.**

5.   Reasonableness of attorney fees in administration of estate depends on amount, nature and length of time of services, amount of estate, ability and skill required, and experience in training of attorney rendering services.

**Executors and Administrators—Where Executor also Administering Assets in Another State, in Final Report Stated Necessity of Employing Attorney to Assist in Both States, Allowance of Compensation for Services Rendered in Other State Held Proper (Or. L., § 761).**

6.   Where domiciliary executor administered assets in foreign state as well and in submitting without approval or rejection claim for attorney fees, stated that, as executor in both states, he was required to employ attorney, objection to allowing compensation for services claimed rendered in that other state *held* precluded, notwithstanding Section 761, Or. L.

**Appeal and Error—Remarks of Judge in Contest Over Attorney Fees for Services to Executor That Counsel were Consuming too Much Time and Statement of Facts Would Suffice Held not Prejudicial, Where He also Stated They Could Put on Other Witnesses if Desiring to Do so.**

7.   In contest over allowance of attorney fees for administration of estate, remarks of judge, during cross-examination of only witness introduced by contestants, touching reasonableness of fee, that counsel on both sides were consuming too much time and mere statement of facts to him would suffice, *held* not prejudicial, especially where stating that they could put on other witnesses if desiring to do so, but that he thought it unnecessary.

**Executors and Administrators.**

8.   Court must determine reasonableness of attorney fees for services to executor, and in so doing cannot be controlled by opinion of experts.

**Executors and Administrators.**

9.   Allowance of attorney fees to executor or administrator is largely discretionary with trial court.

**Courts.**

10.   Executor submitting claim of attorney fees without either approving or rejecting same cannot thereafter be heard to say that court was without jurisdiction.

**Executors and Administrators—Allowance of $40,000 Attorney Fees in Serving Administration of Estate of $1,200,000 for Fifteen Months Held not Abuse of Discretion Under Circumstances.**

11.   Forty thousand dollars as attorney fees for serving administration of estate of about $1,200,000 for period of fifteen months, wherein attorney, in addition to ordinary work, was required to investigate transactions of guardian of decedent and contest his

claim, as well as institute suit against trustee in another state, *held* not abuse of discretion.

**Executors and Administrators—Amount Allowed Other Attorneys for Services to Executor, Which Should have Been Performed by Claimant, Should be Deducted from Fee Allowed as Reasonable.**

12. In passing on claim of attorney fees for services to executor, amount allowed to other attorneys for services which should have been performed by claimant should be deducted from amount found reasonable.

**Executors and Administrators.**

13. One fee only should be allowed attorneys for services rendered executor during same period.

Appeal and Error, 4 **C. J.**, p. 955, n. 35.
Evidence, 22 **C. J.**, p. 502, n. 8.
Executors and Administrators, 24 **C. J.**, p. 66, n. 26, p. 97, n. 15, p. 98, n. 18, p. 99, n. 26 New, p. 100, n. 34, 45, p. 102, n. 58, p. 104, n. 95, 96, 97.
Guardian and Ward, 28 **C. J.**, p. 1233, n. 75.

From Multnomah: GEORGE TAZWELL, Judge.

In Banc.

MOTION DENIED.

For the motion, *Mr. G. G. Smith, Mr. Harrison Allen* and *Mr. C. M. Idleman.*

*Contra, Mr. D. P. Price* and *Mr. Rogers MacVeagh.*

BEAN, J.—On the eleventh day of July, 1923, the Circuit Court of Multnomah County, Probate Department, made and entered an order directing the executor of the last will and testament of Thomas Prince, deceased, to pay C. M. Idleman, $40,000 attorney's fees for services rendered to the executor during the administration of said estate.

On the twenty-first day of July of the same year that court, as a part of the decree approving the final account of the executor, made and entered an order directing the executor to pay to C. M. Idleman

the attorney's fees mentioned for the services named.

The appellants served and filed a notice of appeal to this court from the order and decree of the probate court of July 11, 1923, and also, "from all that part of that certain order, judgment and decree fixing and determining the attorney's fees of Mr. C. M. Idleman, made and entered in the above entitled court and cause, July 21, 1923, in Probate Journal 121 at page 171."

1. Respondent moves to dismiss the appeal for the reason that the order appealed from is ancillary, interlocutory and not a final decree, that it is not an attempt to appeal from the final order and decree settling the final account. For the further reason the notice of appeal was not served upon all the parties interested, namely, Harold T. Prince, who appeared in the lower court.

Respondent in his brief states that "the appellants in order to confer jurisdiction upon this court should have appealed from the decree settling the final account." The order of the probate court of July 21, 1923, recites that there "came on for hearing the final account of H. F. Ong, executor of the last will and testament of Thomas Prince, deceased." It recites the appearance of the executor and the several interested parties, among them Harold T. Prince, by his guardian, William Rees, by his attorney and the usual provisions of a decree approving the final account of an executor, and among other things, in substance, that it further appearing to the court that C. M. Idleman has submitted a bill to said executor in the sum of $50,000 for services rendered by him as attorney for said executor and said estate and upon which there has been paid the sum of

$12,500 by said executor, and that the trustee under the last will and testament and the residuary legatees have appeared and filed objections to the allowance of the claim of C. M. Idleman, and the court, having heretofore heard the testimony in support of and against said claim, finds that the sum of $40,000 is a reasonable sum to be allowed Mr. C. M. Idleman as such attorney's fees, and directed the executor to pay that sum to C. M. Idleman.

It will, therefore, be seen that the part of the decree of the probate court of July 21, 1923, appealed from is a part of the order and decree approving the final account of the executor. Section 548, Or. L., which is part of Title 7, Chapter V, provides in part "that a judgment or decree may be reviewed, as prescribed in this chapter and not otherwise." An order affecting a substantial right which in effect determines the action or suit so as to prevent a judgment or decree therein, shall be deemed a judgment or decree for the purpose of being reviewed.

Section 549, Or. L., authorizes any party to a judgment or decree, other than a judgment or decree given by confession, or for want of an answer, to appeal therefrom. And Section 550, Or. L., directing the manner in which an appeal is taken, provides a party to a judgment, decree or final order or any order from which an appeal may be taken in any action, suit or proceeding, desiring to appeal therefrom, "or some specified part thereof," may give notice in the manner therein provided.

It is not questioned that the appellants could appeal from a portion of the order and decree, settling the final account of the executor. It is also unques-

tioned that the Circuit Court of the State of Oregon from Multnomah County, sitting in probate, has the same powers and jurisdiction in probate matters that the County Court for that county formerly had; the main difference being that there is an appeal directly to the Supreme Court.

Section 945, Or. L., declares that the provisions of Chapter V, Title 7, relating to appeals, to a portion of which reference has been made, are intended to apply to the judgments and decrees of the County Court in all cases except its decisions made in the transaction of county business. See *In re Barker,* 83 Or. 702 (164 Pac. 382).

The notice of appeal covers both the order fixing attorney's fees of C. M. Idleman, entered July 11, 1923, and the order approving the final account entered July 21, 1923. It would seem as though it would make but little difference whether the interlocutory order of July 11, 1923, was mentioned in the notice of appeal or not. By Section 1285, Or. L., the final account of an executor or administrator is required to contain a detailed statement of the amounts of money received and expended by him; from whom received and to whom paid, and refer to the vouchers for such payments, and the amount of money and property, if any, remaining unexpended. Upon filing the final account the court is directed to appoint a day for the hearing of objections to such final account and the settlement thereof. Notice of such settlement is required to be published. By virtue of Section 1286, Or. L., an heir, creditor or other person interested in the estate may file his objections thereto or to any particular item thereof. Under Section 1287, Or. L.:

"Upon the final hearing the court shall give a decree allowing or disallowing the final account, either in whole or in part, as may be just and right; and such decree in any other action, suit, or proceeding between the parties interested or their representatives is primary evidence of the correctness of the account as thereby allowed and settled and the court shall also make an order setting forth the names and ages of the heirs and legatees of such estate and such order shall be *prima facie* evidence of the facts set forth therein."

A decree rendered by a probate court pursuant to this section is a final decree from which an appeal will lie: *Re Roache's Estate,* 50 Or. 179, 190 (92 Pac. 118); *In re Barker, supra; In re Mills' Estate,* 40 Or. 424 (67 Pac. 107); *State* v. *O'Day,* 41 Or. 495 (69 Pac. 542); *Bellinger* v. *Ingalls,* 21 Or. 191 (27 Pac. 1038); *Steel* v. *Holladay,* 20 Or. 462 (26 Pac. 562). The question in *Re Mills' Estate* was whether an attorney whose claim for fees had been allowed after objections to that portion of the final account had been duly tried was a "creditor of the estate" within Hill's Ann. Law, Section 1094, so as to enable him to petition for the removal of the administrator. The court held in a situation parallel to that at bar that the attorney was a creditor of the estate. The court said at page 430, 40 Or.:

"While the claim of an attorney for services rendered to an executor or administrator is originally against the representative of the estate, when examined, approved, and allowed by the county court, it becomes a claim against the estate; but, having been made without notice to the creditors, and upon an *ex parte* application therefor, the order making the allowance is interlocutory, and upon objection thereto may be subsequently modified or set aside by the court upon the final settlement of the estate,

or upon its refusal to do so, by the circuit court or supreme court upon appeal. *Osborn's Estate,* 36 Or. 8 (58 Pac. 521); *Hollis* v. *Caughman,* 22 Ala. 478. Knight's claim was examined and allowed December 11, 1891, by Mills as administrator, who was authorized to employ an attorney when necessary, and under the statute had power to bind the estate to pay for his services such a sum as they were reasonably worth. * * If it (the claim) has been allowed in the manner prescribed by law, he is a creditor of the estate.''

A notice of appeal should enable the court, from a fair construction thereof, by a resort to the transcript, to determine that the appeal is taken from the judgment or decree in a particular case: *Keady* v. *United Rys. Co.,* 57 Or. 327 (100 Pac. 658, 108 Pac. 197). By an examination of the transcript in the present case it is found that the decree of July 21, 1923, was a decree settling the final account of the executor. The notice of appeal is sufficient in this respect to show that the appeal is taken from a part of a final decree, although the notice of appeal does not mention that the decree was rendered in the settlement of the final account.

2. It is also contended that the notice of appeal, not having been served upon Harold T. Prince, was defective. Section 550, subdivision 1, provides in part that if the appeal is not taken at the time the order, judgment or decree is rendered, then the party desiring to appeal may cause a notice to be served on such adverse party or parties as have appeared in the action or suit.

Harold T. Prince appeared in the proceeding in the probate court and was a party to the decree. The question here is, Was he an adverse party within

the meaning of Section 550, Or. L.? Under this section an "adverse party" entitled to notice of appeal is every party who has appeared in the action or suit, and whose interest in the judgment or decree appealed from is in conflict with a modification or reversal sought by the appeal. Every party interested in sustaining the judgment or decree is an adverse party: *In re Waters Chewaucan River*, 89 Or. 659 (171 Pac. 402, 175 Pac. 421); *Smith* v. *Burns*, 71 Or. 133 (135 Pac. 200, 142 Pac. 352, Ann. Cas. 1916A, 666, L. R. A. 1915A, 1130).

Harold T. Prince was a legatee under the will of Thomas Prince, deceased, and by his guardian filed objection in the probate court, and resisted the claim of respondent. A reversal or modification of the decree could not in any way injuriously affect his interest. He is not interested in sustaining the decree from which the appeal is taken. He is not an adverse party within the meaning of Section 550, Or. L. It was not necessary to serve the notice of appeal upon him in order to confer jurisdiction upon this court: *Young's Estate*, 59 Or. 348 (116 Pac. 95, 1060, Ann. Cas. 1913D, 1310). In so far as the record discloses, a change in the decree as sought by the appeal would be favorable to the interest of such legatee.

There was a compliance with the statute relating to the notice of appeal; therefore, the motion to dismiss the appeal is denied.        MOTION DENIED.

### ON THE MERITS.

(246 Pac. 713.)

This appeal was taken from the decree of the Circuit Court allowing the sum of $40,000 as attorney fees to C. M. Idleman, who was attorney for about fifteen months for H. F. Ong, executor of the last will and testament of Thomas Prince, deceased. The controversy in the Circuit Court arose over the final account of the executor, to whom General Idleman had presented a claim of $50,000 for said services. The executor neither allowed nor rejected the claim, but presented the matter to the judge of the Circuit Court in probate, requesting that a proper allowance be made for the services rendered by General Idleman. The estate consisted of real and personal property in the State of Oregon, which was appraised in the sum of about $315,000, and of personal property, consisting principally of stock in corporations in the State of Massachusetts appraised in the sum of over $800,000, and a small amount of similar property in the State of New York. The testimony consists of the opinion of eight reputable lawyers of unquestionable standing and experience at the bar of Oregon residing in Portland. Their testimony was given in response to a hypothetical question purporting to briefly state the services rendered by General Idleman and covering twelve pages of typewritten matter. The services were estimated to be worth from forty thousand to fifty thousand dollars. One attorney stated that a sum of $65,000 and another that $75,000 would not be unreasonable. The executor, trustee for residuary legatees and devisees,

produced only one witness, an attorney of equal standing to the attorneys produced by the claimant, who testified that the services rendered, as stated in the hypothetical question propounded to him, were reasonably worth $15,000. The principal difference in the questions propounded to the attorneys who were witnesses for General Idleman and the attorney for the other interested parties was that in the former the hypothetical question assumed that General Idleman had the responsibility of advising and directing the executor in the administration in the State of Massachusetts as well as the State of Oregon, while the latter question assumed that the services of General Idleman were limited to the State of Oregon substantially. The evidence and hypothetical questions are too long to be incorporated in this opinion and would be of no general benefit to the profession. The circuit judge, who was familiar with the work performed and services rendered by General Idleman, fixed the compensation at $40,000.

MODIFIED AND AFFIRMED.

For appellant H. F. Ong, executor, there was a brief and oral argument by *Mr. D. P. Price.*

For appellants Worcester Bank & Trust Company, trustee, there was a brief and oral argument by *Mr. Rogers MacVeagh.*

For respondent there was a brief over the names of *Mr. Harrison Allen, Mr. G. G. Smith* and *Mr. C. M. Idleman,* with an oral argument by *Mr. Martin L. Pipes.*

COSHOW, J.—3, 4. The services for which General Idleman is asking and has been allowed compensation were rendered to Dr. Ong as executor. For the services Dr. Ong is personally liable to General Idleman. The services are not a direct charge against the estate but constitute a claim against Dr. Ong personally. The executor is allowed to retain from the money of the estate the expenses incurred by him in the administration of the estate, including reasonable attorney fees. The language of the statutes is as follows:

"An executor or administrator shall be allowed, in the settlement of his account, all necessary expenses incurred in the care, management, and settlement of the estate, including reasonable attorney fees in any necessary litigation or matter requiring legal advice or counsel." Or. L., § 1290; *Waite* v. *Willis*, 42 Or. 288, 290 (70 Pac. 1034).

5. What is a reasonable attorney fees depends upon the amount and nature of the services rendered, the amount of the estate and length of time occupied in rendering such services, the ability and skill required, and the experience and training of the attorney rendering this service. The same standard for determining the value of an attorney's service when rendered to an executor should be employed as is used in fixing his compensation when retained by a person in his individual capacity. There is this difference, however, that an executor will not be allowed an amount for attorney fees in excess of the reasonable value of those fees, while one acting for himself alone is at liberty to make any contract with the attorney that he deems advisable. General Idleman and Dr. Ong could have agreed between them-

selves as to the amount the former should receive
for his services, and assuming that agreement to
have been fairly made, both would be bound thereby.
But Dr. Ong could not have bound the estate to pay
more than a reasonable fee for the services rendered,
and if that fee should be less than the agreed amount,
Dr. Ong would have been personally liable for the
excess.  No agreement was made between them, and
the executor was not willing to assume the responsi-
bility of entering into an agreement to pay the
amount charged by General Idleman in this litigation.

It was the duty of the executor to account for that
part of the estate of his testate situated in Massa-
chusetts and New York so far as it was possible for
him to do so.  It was his duty to make proper re-
turns to the United States for the purpose of comput-
ing the estate tax and to the State of Oregon for the
purpose of computing the inheritance tax.  This
could not be done without a knowledge of the parts
of the estate situated in Massachusetts and New
York.  In fact, Dr. Ong upon the advice of General
Idleman was appointed executor of the will in the
State of Massachusetts, and he actually administered
that part of the estate situated in Massachusetts.

General Idleman served as attorney for the exec-
utor for about fifteen months.  During that time,
in addition to the ordinary work imposed upon an
attorney for an executor in the progress of executing
the will, he investigated the transactions of one
Hammond, who had served as guardian of the dece-
dent for two or three years immediately prior to
his death.  During the guardianship, the guardian
had handled a large amount of property and had not
stated any account.  The work required the examina-

tion of the books of the guardian as well as securing a report of his transactions. When the guardian finally reported, he claimed as compensation for his services the sum of $100,000. That sum seemed exorbitant to the executor and objections were filed and a contest conducted, resulting in an order of the court fixing the guardian compensation at $25,000. An appeal was taken to this court where the judgment of the Circuit Court was affirmed: *In re Guardianship of Thomas Prince,* 104 Or. 670 (209 Pac. 90). An idea of the work involved in the trial of that case in the Circuit Court may be gained by an examination of the opinion of this court. General Idleman did not appear in this court.

Another additional service rendered by General Idleman was the preparation of a statement of facts in the form of a complaint in a suit instituted in Massachusetts against a trustee of the decedent. A Mr. Ames had served as trustee for a number of years for the decedent and refused to account or make a statement of his transactions, or of the property in his possession or under his control belonging to the estate. General Idleman prepared the necessary statement of facts and forwarded them to attorneys in Massachusetts for the purpose of instituting a suit there. As a result of this suit, the trustee, who was a nephew of the decedent and one of the residuary legatees, and the other residuary legatees effected an agreement and settlement whereby that suit was dismissed. In this same agreement arrangements were made for the final distribution of the estate and the closing of the administration. This agreement and settlement also resulted in the

discharge of General Idleman as attorney for Dr. Ong, executor.

Harold T. Prince, son and only legal heir of the deceased, commenced a contest of the will. Before this contest was brought to a hearing the agreement referred to above between the other legatees and devisees was entered into resulting in the contest being dismissed.

6. The principal contention on the part of appellants is that General Idleman, the claimant and respondent, is not entitled to compensation from the estate administered in Oregon for his services to Dr. Ong, the executor and administrator in Massachusetts. We believe that the appellants are precluded from making this contention for the reason that Dr. Ong in his final account submits to the court this identical question which is recited in his final account as follows:

" * * In performing the duties of your executor in the State of Oregon, and as ancillary executor of said estate in the State of Massachusetts, it was necessary that your executor employ attorneys to represent him and to do the legal work necessary in the premises, and to advise your executor as to his duties and procedure in the matter of probating said estate; that your executor employed Mr. C. M. Idleman, attorney in the city of Portland, Oregon, to represent him in that capacity."

It thus clearly appears that Mr. Idleman was retained not only to assist Dr. Ong in his duties as executor in Oregon but in the same capacity also in Massachusetts. Mr. Price, who represents Dr. Ong, as well as the other appellants in this court, received his allowance for similar services from the Circuit Court from which this appeal is taken. We

have discovered nothing in the record justifying us in making any different basis for allowing to Dr. Ong, executor, and to Mr. Price, his attorney, pay for their services to both estates than from that to be used in fixing the fee due Mr. Idleman for similar services. All of the beneficiaries of the estate agreed to the compensation allowed the executor and Mr. Price, and the learned circuit judge in this state confirmed that agreement and allowed Dr. Ong, the executor, his claims therefor. The Circuit Court recited in its judgment as follows:

"And it further appearing to the Court that Mr. C. M. Idleman has submitted a bill to said executor in the sum of $50,000 for services rendered by him as attorney for said executor, and said estate, * * , and that the Trustees under the last will and testament, and the other residuary legatees thereunder have appeared and filed objections to the allowance of the claim of Mr. C. M. Idleman, and the Court having theretofore heard the testimony in support of and against said claim, and now being fully advised in the premises, finds that the sum of $40,000 is a reasonable sum to be allowed Mr. C. M. Idleman as attorney fees for legal services rendered by him as attorney for said executor in said estate * * ."

The judgment further recites:

"That the gross estate administered upon by said executor, including the assets in the State of Oregon and in the State of Massachusetts, and including the income therefrom since the appointment of said executor, is in excess of $1,200,000."

It thus appears that the value of the estate for which the executor was responsible was in excess of $1,200,000. It would not be fair or just to limit the compensation of his attorney to compensation based upon the part of the estate limited to Oregon, in

view of the fact that General Idleman's services were required by the executor as well for that part of the estate administered in Massachusetts as in the State of Oregon. Mr. Price testified on the stand that after he became attorney for Dr. Ong, the executor, he had done all the work of the attorneys and that he kept pretty close touch on everything that was done in the estate. "I don't believe there has been an order taken in the eastern jurisdiction without I have first been consulted, and I believe that I have copies of all of those orders."

The attorneys for appellants rely on Or. L., Section 761, reading as follows:

"The authority * * of an executor or administrator does not extend beyond the jurisdiction of the government under which he was invested with his authority."

There is nothing in that statute preventing an administrator in a foreign jurisdiction from employing an attorney of this state. The record in this appeal conclusively shows that Dr. Ong as executor did employ General Idleman to represent him in the Massachusetts administration as well as in Oregon. The record also discloses that General Idleman did a large amount of work in the Massachusetts jurisdiction. This work was done partially before Dr. Ong was appointed ancillary executor in Massachusetts. Ordinarily the Massachusetts court would have fixed the compensation and expenses of the executor of that state, but no law was violated by the beneficiaries of the estate by arranging as they did to have the whole matter adjusted in the State of Oregon. The executor of the estate in both jurisdictions resides in Oregon and the services were ren-

dered to him. The decree of the Circuit Court recites that the compensation allowed Dr. Ong for the benefit of General Idleman is for the services in Massachusetts as well as in Oregon. There is no ground then for the argument that General Idleman could apply to the court of Massachusetts for additional compensation.

Complaint is made by the appellants regarding the services of General Idleman in Massachusetts. The complaint is in effect that he did not accomplish anything. It is true that Ames, trustee of a large amount of property belonging to the decedent, refused to account to the executor. He did not base his refusal, however, on the ground that the executor did not have his letters authenticated and with him when the trip was made to Massachusetts. It was the duty of Mr. Ames to have revealed to Dr. Ong, when he was there with his attorney, the property he had belonging to the decedent. He continued to withhold that information and it was necessary for the executor to bring a suit in order to get the information. General Idleman did the necessary work to institute that suit. He should be compensated for it.

Further complaint is made because the report made by General Idleman for the executor to the federal government of the estate tax was inaccurate, although Mr. Price as attorney for appellants stresses this point he admits in his testimony, as well as did his witness, Mr. Montague, that it was very common for such reports to be inaccurate and require revision. Both Mr. Price and Mr. Montague are attorneys of large experience in such matters and it is mentioned by them as the general experience of attorneys to

have to revise such reports. These reports are required to be made in a definite time after the death of the decedent and usually before such estate can be sufficiently administered so as to determine accurately the amount of tax due. It also appears in the testimony that the report made by General Idleman was used by his successor, Mr. Price, in making the final report.

7. Appellants complain because the learned judge conducting the trial remarked during the cross-examination of the only witness introduced by the contestants, appellants here, touching the reasonableness of the fee:

"I think counsel on both sides are taking up an unnecessary amount of time on the testimony in this case, gentlemen. If counsel had made a statement to me as to what the facts were, I think I would have given just about as good a decision or as bad a decision as I am going to make with all the witnesses that you have here."

The witness being interrogated was an expert witness and his testimony was his opinion. It is claimed by appellants that those remarks with more of the same tenor precluded appellants from introducing further testimony along that line—"that no self-respecting member of the bar would have undertaken to follow" that witness. We do not concur in that view. The learned judge followed that remark with the statement repeated that they could put on other witnesses if they so desired, but that he thought it was unnecessary to do so. We do not believe that the conduct of the court was prejudicial to appellants.

In *Re Faling's Estate*, 105 Or. 365, 449 (208 Pac.

715), Mr. Justice Bean said: "We may be aided, but not controlled, by the opinion of witnesses."

In *Baker* v. *Multnomah County,* decided May 25, 1926, speaking through the same justice, this court said:

"The court should exclude the inference, conclusion or judgment of an expert witness as to the final fact.  22 C. J. 502, § 597."

8. To the same effect, is *Mumper* v. *Murphy,* 212 Ill. App. 52.  It was the duty of the court to determine the amount of the fee, and in doing so it could not be controlled by the opinion of experts.

9. It is the rule of law in this state that the matter of attorney fees being allowed the administrator or executor is largely within the discretion of the trial court: *Guardianship of Thomas Prince,* 104 Or. 670, 678 (209 Pac. 90); *Re Assignment of Woodall,* 33 Or. 382, 384 (54 Pac. 209); *Re Assignment of Bank of Oregon,* 32 Or. 84, 90 (51 Pac. 81); *Re McCullough's Estate,* 31 Or. 86, 94 (49 Pac. 886); 21 Cyc. 173. In his opinion the learned judge of the trial court said:

"These legatees, however, should bear in mind that when they asked General Idleman to retire, he had the affairs of the estate well in hand and he could have carried the same to completion with little effort on his part, and these legatees should not now be heard to complain if, because of their action in requesting Mr. Idleman to retire and in their retaining new counsel for the executor, they are required to pay a larger fee than they otherwise would, had General Idleman's services been retained."

10. We infer from the record that General Idleman offended Mr. Ames, trustee, because he attempted to force the latter to make an accounting of his trust.

In this procedure Mr. Idleman was correctly advising the trustee whose duty it was to ascertain and reduce to his possession the property in the hands of the trustee. Dr. Ong testified that in the settlement made by Mr. Ames and the other beneficiaries of the estate it was the ''general impression that it would not be entered into unless I secured some other attorney.'' General Idleman should not be penalized for correctly advising the executor. The executor himself did not make any complaint in his testimony regarding the services of General Idleman. He submitted the value of those services to the Circuit Court and should not now be heard to say that that court was without jurisdiction to determine the matter.

11–13. While we think that the fee of $40,000 is a large fee, yet considering the large amount of work involved, the heavy responsibility, the complications involved in the estate and the extra work required of General Idleman as attorney, a large part of which was caused by the unjustifiable attitude of Mr. Ames, one of the residuary legatees and devisees, requiring the highest degree of care as well as ability in the contest with the guardian as well as trustee of the decedent, we are not prepared to say that the court abused its discretion in allowing that amount. We are of the opinion, however, that there should be deducted from that amount the payments made to Clark, Middleton & Clark and John F. Logan, because those payments were made for services which should have been attended to by the attorney for the executor. The fees of the other attorneys employed in the contest over the guardianship should not be deducted, because those services were not such as

are ordinarily required of an attorney for an executor, The amount for which General Idleman is entitled to recover, therefore, may be stated as follows toward fee allowed:

Total amount allowed.....................$40,000
Amount heretofore paid him..........$12,500
Amount allowed Clark, Middleton &
    Clark ........................  3,000
Amount paid to John F. Logan.......  3,000
Amount paid to Walter B. Hobbing....    350 18,850

Balance due General Idleman...............$21,150

One fee only should be allowed attorneys for services rendered the executor during the same period. The decree appealed from will be modified accordingly and affirmed. Neither party will recover costs in this or the Circuit Court.

MODIFIED AND AFFIRMED.

McBRIDE, C. J., and BURNETT and RAND, JJ., concur.